BANK OF ALMA, APPELLANT, V. DAVID N. HAMILTON ET AL., APPELLEES.

FILED NOVEMBER 19, 1909.    No. 15,836.

1. **Equity:** LIMITATIONS. If a litigant asks affirmative equitable relief, he will be required to do justice himself with regard to any equity arising out of the subject matter of the action in favor of his adversary, and the statute of limitations is no bar to the imposition of such conditions.

2. **Quieting Title:** EVIDENCE. The evidence examined in the opinion, and *held* to sustain the judgment.

APPEAL from the district court for Harlan county: HARRY S. DUNGAN, JUDGE. *Affirmed.*

*John Everson, W. S. Morlan* and *J. G. Thompson,* for appellant.

*G. Norberg* and *Gomer Thomas, contra.*

ROOT, J.

This is an action to quiet plaintiff's title to a quarter section of land in Harlan county. Defendant Hamilton made a cross-demand for an accounting and prevailed. Plaintiff appeals.

In 1895 Hamilton and a Mr. Gardner traded certain chattels to Mrs. Carpenter for the farm in question, and she, by their direction, conveyed it to plaintiff's cashier. The land was subsequently transferred to plaintiff, and by it sold to a Mr. Robinson, but a deed has not been made to the purchaser. Plaintiff alleges that it has had

adverse possession of the land for more than ten years next preceding the commencement of this suit. Counsel for plaintiff suggests in his briefs, and argued at the bar, that the bank was a mortgagee in possession; that Hamilton's right to redeem accrued more than ten years before this action was instituted and the statute of limitations bars him from any relief. Plaintiff asks for affirmative equitable relief and it should do equity as a condition precedent to receiving any assistance from the court. *Kerr v. McCreary*, 84 Neb. 315. The statute of limitations does not deprive the court of power to impose those conditions. *Hobson v. Huxtable*, 79 Neb. 340.

Coming therefore to the merits of the case, the cashier testifies that he loaned Hamilton and Gardner $600 upon the latter's representation that it was to be used as boot money to close up the trade with Mrs. Carpenter; that title to the land was taken by the witness as security for the payment of that loan; that subsequently he loaned the parties, for Hamilton's exclusive benefit, $100; that the notes have not been paid, but that Gardner, about two years after the execution of the deed, orally renounced all right to redeem the land. Hamilton did not participate in the negotiations which were carried on with plaintiff's cashier by Gardner. Hamilton testifies that no money was paid Mrs. Carpenter in the trade, but that Beddoe, her agent and brother-in-law, received about $100 commission; that the witness did not authorize Gardner to borrow money from the bank or pledge Hamilton's interest in the land. It is argued that the bank ought to recover $700, with interest, because no one explicitly contradicts the cashier's testimony that that amount of money was loaned on the credit of the transfer from Mrs. Carpenter. There is, however, evidence tending strongly to corroborate Hamilton and weaken plaintiff's evidence on this point. In the first place, the $641 note is signed by Gardner alone, whereas the bill for $106 bears the signature of Gardner and Hamilton. At the time the Carpenter deed was made there were unreleased chattel

mortgages from Gardner to plaintiff and to its cashier, aggregating $2,000, on file with the county clerk of Harlan county. Gardner and the cashier testified that the former owed little, if anything, to the mortgagees, and they were protecting Gardner's property from seizure by his creditors; but it is probable that Gardner did owe those mortgagees considerable money at the time the deed was made, and that the $641 note evidenced part of that debt. No entries in the records of the bank or in the private books of its cashier were produced to show that anything was paid to Gardner or Hamilton about the time the larger note was given. True, there is evidence to the effect that mice had mutilated some of these records; but the bank's cashbooks for that period were intact, and confessedly did not contain any evidence relevant in this case. Gardner, an intimate friend and one time business associate of the cashier, testified for plaintiff, and states that he has forgotten all of the details of the transaction. Carpenter and Beddoe were not produced, nor their testimony taken, and the evidence fairly preponderates in favor of a finding that the woman was not paid any cash consideration in the trade, nor her agent more than $100, which is evidenced by the smaller note. Finally, the bond for a deed was signed one day, and acknowledged two days subsequent to the date of the larger note. It was prepared by plaintiff's vice-president, a practicing attorney, and signed by the cashier. The cashier testified that he always examined documents before signing them, and probably read the bond before signing his name thereto, although he does not remember the fact. Documents executed contemporaneous with a transaction in dispute become landmarks by which to correct, adjust and supply the imperfections and uncertainties of memory. They supply convincing evidence of controverted facts and will be construed most strongly against their author. *Hart v. Ten Eyck*, 2 Johns. Ch. (N. Y.) *62; *Miller v. Cotten*, 5 Ga. 341; *Thomas v. Paul*, 87 Wis. 607; 1 Moore, Facts, sec. 11.

Considering all of the evidence, the trial court was justified in finding that Hamilton's interest in the land was not pledged for payment of the $600 note. The amount found due him is $774.61. Counsel for plaintiff assert that upon any theory of the case the judgment is excessive, but fails to furnish dates and amounts from which a computation should be made according to his scheme, and does not make the calculation himself. It is evident from the briefs that some allowance was made the cashier for services rendered, and the record indicates that Hamilton is not given credit for the use of the grass land. It also appears from the evidence, although such an issue was not presented by the pleadings, that each of the notes is tainted by usury. ·If credit is given plaintiff for $700 with 10 per cent. simple interest thereon to the date of the sale of the farm, for taxes paid with 10 per cent. interest thereon, and $5 a year for collecting rents, and it is charged with $1,900, the net consideration of said sale, there is a balance due Hamilton of $694.45. If Hamilton's share is not to be held for any part of the $600 note, there is due him $840.52. He does not ask to have the decree of the district court modified, and plaintiff has no just cause for complaint.

The judgment of the district court is

AFFIRMED.