OREY C. BELL ET AL., APPELLEES, V. CHRISTIANA DINGWELL ET AL., APPELLANTS.

FILED JUNE 22, 1912. No. 17,082.

1. Courts: COUNTY COURTS: JURISDICTION. Controversies involving title to and ownership of real estate are not within the jurisdiction of county courts.

2. Equity: JURISDICTION. "It is a well-settled principle of equity jurisprudence that where a court of equity has obtained jurisdiction of a cause for any purpose it will retain it for all, and will proceed to a final determination of the case, adjudicate all matters in issue, and thus avoid unnecessary litigation." *Buchanan v. Griggs*, 20 Neb. 165.

3. ———: TITLE TO LAND: ACCOUNTING. One out of possession of real estate, the title to his undivided portion of which has been fraudulently obtained by the one in possession, may join with his suit in equity for a recovery of his title a demand for an accounting as to the rents and profits and for a partition of the land.

4. Limitation of Actions: FRAUD. The pleadings and evidence examined and set out in the opinion. *Held*, That this case is controlled by the limitations of section 12 of the code.

5. Guardian and Ward: AUTHORITY OF GUARDIAN: BORROWED MONEY:

LIEN. A guardian is without authority to borrow money upon his ward's real estate without an order from a court of competent jurisdiction. If he does so, it will be held to be his personal debt, and, if he be an owner of an undivided interest in such real estate, the debt will be treated, as between him and his ward, as a lien upon his undivided interest only.

6. Mortgages: LIEN. The mortgage set out in the opinion *held* properly charged to the undivided interest of the defendant Christiana Dingwell in the land in controversy.

7. Evidence: LAWS OF OTHER STATES: ADMISSIBILITY. Where the trial court admits exhibits purporting to be the laws of another state, the question as to whether or not a sufficient foundation had been laid for their admission will not be inquired into where it appears that the opposite party has himself alleged the facts to be the same as shown by such exhibits.

8. Parent and Child: SUPPORT OF CHILD: ACCOUNTING: REVIEW. Where minor children are taken into the family of their mother and step-father, and they all thereafter reside together as one family during the minority of such children, each rendering to the other such support, care, education, obedience, and service as is usual with families of their class, without any agreement as to compensation from either to the other, and during such time the family is residing upon 80 acres of land belonging to the mother and children jointly, a judgment, refusing compensation to the parents for support, care and education of the children, and denying to the latter a recovery for rents and profits of the property, during such period of time, will be sustained on appeal.

9. Homestead: RIGHTS OF INFANTS. Where a widow, whose husband died intestate while a resident of a foreign state, removes from such state to this state, remarries here, is then appointed guardian of the minor children of herself and such decedent, and applies to the court of the foreign state for leave to exchange land situate therein, which under the laws of that state belongs to such widow and minor children jointly, for land in this state, and, upon obtaining leave so to do, fraudulently, and in violation of the terms of the order of the court, takes title to such land in her own name, to the exclusion of such children, and then moves upon the land, so acquired, with her second husband, she does not thereby obtain the right to hold the same as a homestead as against such children.

APPEAL from the district court for Pawnee county: JOHN B. RAPER, JUDGE. *Affirmed as modified.*

*John C. Dort,* for appellants.

*William M. Jackson* and *Story & Story, contra.*

FAWCETT, J.

Defendant Christiana Dingwell is the mother of plaintiffs; defendant John Dingwell being her second husband. Her former husband, and father of the plaintiffs, Robert Bell, a resident of the state of Iowa, died December 5, 1885, leaving defendant Christiana and the plaintiffs as his only heirs at law. At the time of his death he owned 80 acres of land in Taylor county, Iowa, and some property in the town of Clearfield, in that county. The children were then aged three, six, and eight, respectively. In 1887 defendant Christiana was married to her codefendant. In December, 1889, she was appointed by the county court of Pawnee county as guardian of the plaintiffs, and duly qualified as such. On February 15, 1890, she was duly appointed foreign guardian of plaintiffs by the district court for Taylor county, Iowa. Previous to her marriage with her codefendant, she had moved with the plaintiffs to Pawnee county, in this state. Upon her appointment as guardian by the district court in Iowa, she filed in that court her petition, in which she alleged that she was the owner of an undivided one-third, and the minor children, plaintiffs herein, were the owners of an undivided two-ninths, each, in the real estate in that county; that the farm land was worth $2,200, subject to a mortgage for $700, $500 of which was then due and unpaid; that neither she nor the minor children had any means with which to pay the mortgage; that the property in Clearfield was worth $600; that petitioner was permanently located in Pawnee county, Nebraska, was the mother of said minors, and that they resided with her; that Jacob Wade was the owner of the northeast quarter of the northeast quarter of section 35, and the northwest quarter of the

northwest quarter of section 36, township 2, range 10, in Pawnee county, Nebraska, which was worth about $2,000; that Wade wanted to move to Taylor county, Iowa, and wanted to exchange his 80 acres in Pawnee county for the 80 acres belonging to the minors and herself in Taylor county, and would pay $200 difference in value, the mortgage upon the Taylor county land to be paid off; "that such a trade would be of great benefit to the minors and herself, as they could live upon it and save expenses of agent," etc.; and prayed for an order of the court permitting her to sell the town property in Clearfield and to apply the proceeds on the mortgage upon the farm; that she be permitted to convey to Wade the shares of the minors, together with her own share, and to receive from him the $200 to apply on the mortgage on the Taylor county land, and also receive from him a warranty deed conveying the Pawnee county land to herself and said minors jointly, naming the respective shares of each. Upon a hearing of this petition after due and legal notice had been given to all parties interested, the court entered a decree as prayed in the petition, in which it was expressly provided that the petitioner should take from Wade a warranty deed conveying to her and said minor heirs jointly, naming the respective shares of each, the Pawnee county land. In accordance with this decree of the Taylor county court, defendant Christiana, for herself and as guardian for the minors, executed to Wade a deed to the Taylor county land, but instead of taking a deed of the Pawnee county land to herself and the plaintiffs jointly, as directed by the Iowa court, she took the same in her own name individually. She received the $200 "boot money" from Wade, and sold the Clearfield, Iowa, property for $400. The mortgage upon the Iowa land, when paid, amounted, as found by the court, to $800, which, as will be seen, was $200 more than the aggregate of the money received by her from Wade and the sale of the Clearfield property. For this excess of $200, together with interest, the district court upon the hearing of this case gave her credit.

About five years after the exchange of the land, as above set out, on February 3, 1897, the defendants jointly executed a mortgage upon the Pawnee county land to the Union Central Life Insurance Company for $900, and on February 2, 1907, they jointly executed a renewal thereof. This mortgage is now a lien upon the lands in controversy. It is conceded that the mortgagee accepted the mortgage without any knowledge of the rights and interests of the plaintiffs.

After the marriage of the defendants they moved upon the land in controversy, and have lived thereon ever since. During all the years of their minority the plaintiffs lived with the defendants, and the relations of the parties were those of an ordinary family, the defendants exercising the authority over and giving to the plaintiffs the care, supervision and attention usually exercised and given by parents, and the plaintiffs yielding to them the obedience and service usually accorded and given by children to parents. They worked just as other children work upon farms, and were educated in about the same manner that other respectable parents of their class educate their children. There is some evidence tending to show that, while attending the public school, the children were kept at work upon the farm a little longer in the autumn than other children, but, upon the whole, we are unable to say that they did not receive the same consideration as that ordinarily received by children brought up upon the farm. On the other hand, it is conceded by the defendants that plaintiffs performed their duties as children.

The prayer of the petition is that defendant Christiana be decreed to be the owner of but an undivided one-third interest in the land; that she be decreed to be the holder as trustee for each of the plaintiffs of an undivided two-ninths, which interest she be required to convey to plaintiffs free and clear of all incumbrances, or that judgment be entered confirming the shares of the parties accordingly; that the mortgage of $900 be decreed, as between

the parties, to be a first lien upon the share of defendant
Christiana; that the land be partitioned according to the
respective rights of the parties, or, if the same cannot be
equitably divided, that it be sold and the proceeds di-
vided according to the rights of the parties, and that
plaintiffs have judgment against the defendants for the
sum of $2,266 with interest, as their share of the rents
and profits, and the same be adjudged a lien upon the in-
terest of Christiana in said lands; and for general equi-
table relief.

Defendants filed objections to the jurisdiction of the
court on the ground that defendant Christiana is guard-
ian of the plaintiffs; that she has made no final report as
such; that she has not been discharged, and that the
guardianship matters are still unsettled; and also filed a
general demurrer to the petition. The objections and
demurrer were all overruled, and defendants answered,
first, that the court had no jurisdiction for the reasons
set out in their objections above outlined; second, the
statute of limitations. The answer then admits the filing
of the petition in the court in Taylor county, Iowa, and
the entry of the decree by that court; admits the relation-
ship of the parties to this suit; admits receiving the use
and benefit of the Pawnee county land, but denies the
value thereof "being anything like the sum alleged by
plaintiffs;" admits that the land was deeded to defend-
ant Christiana in her own name; denies generally all
allegations not specifically admitted; alleges that while
the guardian's action was pending in the Iowa court the
mortgagee commenced a foreclosure of the mortgage; the
borrowing by defendant Christiana from her husband
and codefendant of sundry sums of money, which sums,
together with the $400 received from the sale of the
Clearfield property, were used in paying debts of her
former husband; that there was no money or property
remaining in the estate of her former husband, after pay-
ing off the debts and the judgment in foreclosure; that
defendant Christiana is the owner of the land in contro

versy; that plaintiffs have no interest therein and are not in possession thereof; that the land is the homestead of the defendants and has been claimed by them as such for more than ten years; that defendants have placed costly improvements upon the land, describing them, aggregating, as they allege, $7,000; that they cared for, clothed, nursed in sickness, and educated the plaintiffs during their minority; that the said care, etc., was furnished at a cost to defendants of more than $9,000; denies owing plaintiffs any sum whatever; and alleges that upon a strict accounting plaintiffs are and would be indebted to the defendants in the sum of $9,000, no part of which has been paid. The prayer is that they be allowed to go hence, recover their costs, and "for such further and different relief as may be just and equitable." The reply denies all allegations in the answer, except that defendant Christiana has never made an accounting as guardian of any of the plaintiffs, has never filed any report as such guardian, and that no proceedings have ever been had in the county court since her appointment.

The court upon a hearing found generally for plaintiffs, and found specially: the death of Robert Bell; the property owned by him at the time of his death and the relationship of the parties as above outlined; that, under the laws of Iowa in force at the time of the death of Robert Bell, his lands descended in fee simple, one-third to defendant Christiana and two-thirds to the three children jointly; finds the ages of the plaintiffs; that the youngest reached his majority February 16, 1906; that this action was begun February 13, 1909; the marriage of the defendants; the appointment of defendant Christiana as guardian in the two courts above referred to; that Christiana made application to make the exchange of lands and obtained an order therefor and executed such exchange, as above set out; the sale of the Clearfield property by defendant; that the mortgage on the Taylor county land amounted, with interest and costs, to $800; the receipt by defendant Christiana from the

48

sale of the Clearfield property of $400 and from Wade
$200; that after receiving the deed to the Pawnee county
land defendants moved upon the same, and had lived
thereon ever since, occupying it as a family homestead;
that plaintiffs, as part of the family, lived with defend-
ants for many years; that during the time plaintiffs
lived at defendants' home they were supported, edu-
cated and cared for by defendants as parents, and
during said time plaintiffs worked for and were governed
by defendants as their own children, without any agree-
ment concerning payment of any living expenses for
plaintiffs; that since taking possession of the land
defendants have made valuable improvements, the pres-
ent worth of which is $1,750; that the annual rental value
of the land, exclusive of the improvements, from 1903 to
1910, was $180 per annum; that plaintiffs were each en-
titled to recover $40 per annum for said years, with inter-
est at 7 per cent. from December 1 of each year, as the
value of such use and occupation of the land, from the
time plaintiffs ceased to be supported by defendants;
"that, after deducting the sum of $200 and interest from
these amounts, there is due and owing to each of plain-
tiffs from defendants $239.39" (the $200 here referred
to is the sum which defendant Christiana was required
to furnish to complete the payment of the mortgage
upon the Taylor county land); "that neither of plain-
tiffs knew until within four years before the commence-
ment of this action that said deed named Christiana
Dingwell as sole grantee, instead of setting out the rights
of all plaintiffs, nor did either of plaintiffs discover until
within four years before beginning this action that they
had any interests in the land;" that defendants executed
the mortgage and renewed the same upon the dates and
for the amount above set out; that the same is now a
lien upon the premises, but as between plaintiffs and de-
fendants should be a lien only upon the share of Chris-
tiana; that Christiana has never had an accounting as
guardian, nor made and filed any report of her doings as

such; that no proceedings have been had in the county court of Pawnee county since her appointment in 1889; and adjudged that Christiana is the owner of an undivided one-third and plaintiffs each of an undivided two-ninths in the property; that Christiana is holding the title to two-thirds of the land as trustee for plaintiffs; ordered the defendants to convey their several portions to plaintiffs free and clear of incumbrance; confirmed the shares of the parties accordingly, and adjudged that the same be divided among the parties according to their shares; appointed a referee to make partition; gave judgment for the plaintiffs against the defendants for the sum of $239.39 each, and that execution issue therefor, and that the mortgage as between the parties stand as a lien on the one-third interest of the defendant Christiana. A commission was issued to Frank A. Barton as referee. On October 19, 1910, the referee reported that the lands could not be equitably divided; that it was for the best interests of the owners that the same be sold and the proceeds divided. By further decree the report of the referee was confirmed and an order entered that he proceed to sell the premises subject to the mortgage of $900. From these decrees defendants appeal, and from that portion allowing defendants $1,750 for improvements and fixing the reasonable rental value of the land at $180 a year plaintiffs file a cross-appeal.

We shall not separately consider the cross-appeal, as the conclusion we have reached disposes of all points raised on both appeals.

It is argued that, under the rule that where an action is pending in two courts the court first acquiring jurisdiction will hold the same, excluding the other, the district court was without jurisdiction to proceed with this matter, for the reason that it is still pending in the county court of Pawnee county and should have been completed there, and the guardian discharged or an appeal taken from the settlement before a suit for partition or for the quieting of title could be maintained. This contention

does not require serious consideration. The county court would have been entirely without jurisdiction to determine the main question litigated in this suit, which is the title to and interest in real estate.

It is further urged that the court erred in awarding partition, for the reason, as claimed, that this is an action concerning real estate, where the title is in dispute; that the pleadings show this to be true, and that the first fact to be determined is that of ownership, which is a fact to be determined by a jury, and under the law cannot be tried out in an action in equity for the quieting of title and the partitioning of land among cotenants; that partition cannot be had by one out of possession, where they have no title, or where the title is in and ownership claimed by another. In support of this contention they rely upon *Seymour v. Ricketts*, 21 Neb. 240, and *Mc-Murtry v. Keifner*, 36 Neb. 522. In those cases the parties asking for partition claimed to have the legal title; and, the parties asking for partition being out of possession, we held that they could not obtain such relief until they had first obtained possession by the ordinary proceedings at law. In this case plaintiffs expressly alleged that they did not have such a title, but that defendants fraudulently, as we shall later show, possessed the entire legal title. They therefore were not in a condition to bring ejectment nor to obtain any rights in any sort of an action at law. They were compelled in the first instance to appeal to a court of equity to invest them with their actual ownership in and title to their undivided interests in the lands in controversy. The court having properly acquired jurisdiction for that purpose, which was really the main and controlling question, properly retained it for all purposes. As was said by our present chief justice, in *Buchanan v. Griggs*, 20 Neb. 165: "It is a well-settled principle of equity jurisprudence that where a court of equity has obtained jurisdiction of a cause for any purpose it will retain it for all, and will proceed to a final determination of the case, adjudicate all matters

in issue, and thus avoid unnecessary litigation." The rule there stated is again announced and followed in *Seng v. Payne*, 87 Neb. 812. It follows therefore that, having obtained jurisdiction for the purpose of determining the question of title and ownership, it was not only within the power, but was the duty, of the district court to proceed to a final determination of the case and to adjudicate all matters in issue, thereby avoiding unnecessary litigation. In order to do so, the court properly considered and disposed of the question of title and ownership, the value, use and occupation of the premises, the liability of the respective parties for the payment of the mortgage, the value of the improvements, and, after disposing of all of those questions, proceded to award partition of the land in controversy.

Another defense relied upon is the statute of limitations. Under the holdings of this court in *Kerr v. McCreary*, 84 Neb. 315, and *Bank of Alma v. Hamilton*, 85 Neb. 441, it is questionable whether the defendants are entitled to urge this defense, for the reason that, by appearing and asking for an accounting and praying for equitable relief, they have subjected themselves to the equitable powers of the court and have bound themselves to do equity on their part. In the first paragraph of the syllabus in the latter case we held: "If a litigant asks affirmative equitable relief, he will be required to do justice himself with regard to any equity arising out of the subject matter of the action in favor of his adversary, and the statute of limitations is no bar to the imposition of such conditions." In addition to the rule there announced, we think the district court was right in holding, in effect, that this suit is governed by section 12 of the code, which provides that an action for relief on the ground of fraud may be brought within four years after the discoverey of the fraud. But it is urged by defendants that "the petition in this action does not plead or attempt to plead any fraud, but that by mistake or inadvertence appellant Christiana Dingwell was named

as sole grantee." In this contention we are unable
to concur. It is true the petition says, "but in said
deed, through a mistake or inadvertence, the said Chris-
tiana Dingwell was named as sole grantee, when these
plaintiffs should have each been named therein as grantees
of an undivided two-ninths thereof;" but this statement
in the pleading of the plaintiffs, as to the action of their
mother in taking title to the land in her own name when
it should have been taken in the names of all, must be
construed in connection with the other substantive facts
alleged in the petition, which are that the defendant
Christiana and the plaintiffs were the joint owners of the
land; that the defendant so represented that fact to the
Iowa court; that that court so found, and ordered the de-
fendant to take the title to the land in her name and in
the names of the plaintiffs, as stated by her in her petition
and as found by the court; that she conveyed to Mr. Wade
the land in Iowa to which the plaintiffs had title, and, in
violation of the judgment of the court, took the title to the
Pawnee county land in her own name. The result was a
legal fraud, and the simple fact that they in their peti-
tion said that she perpetrated this fraud through "mis-
take or inadvertence" is immaterial. Its immateriality
becomes all the more conspicuous in the light of the fur-
ther fact that she is here herself insisting that she did
not take the title through mistake or inadvertence, but
that she is the owner of the entire title. The district
court was right.

It is further contended that the court erred in finding
that the $900 mortgage should, as between plaintiffs and
defendants, be a lien on the share of defendants only;
and in support of that contention it is urged that they
were compelled to mortgage the land in the first instance
to raise the balance of money needed to complete the pay-
ment of the debts against the estate of plaintiffs' father,
which included the mortgage and numerous other items.
This contention must fail for several reasons. The prac-
tical effect of the court's judgment is to charge only $700

of the mortgage against the one-third interest of the defendant, credit being given her for the other $200 as hereinbefore shown, which is all the money that it was necessary for her to borrow to complete the payment of the mortgage on the Iowa land. Any other debts or liabilities paid by the guardian, or any moneys borrowed by her, were without authority from either the Iowa court or the county court of Pawnee county. As guardian she was entirely without authority to borrow money upon her wards' property and pay debts chargeable against their father's estate in Iowa, without a proper order from the proper court. In addition to this, the evidence as to the expenditures made by defendant is so vague, uncertain and indefinite as to be incapable of ascertainment. Defendant having placed this mortgage upon the land without authority, it must be held to be her individual loan, and the court properly charged it against her interest.

It is next insisted that the court erred in admitting certain exhibits offered by plaintiffs "purporting to be the laws of the state of Iowa." We find it unnecessary to inquire into this question, for the reason that, even if the exhibits were improperly admitted, they simply corroborate the allegations contained in defendants' petition, which she filed in the Iowa court, and in which she set out the interests of herself and her children, as the heirs of Robert Bell, deceased.

It is next contended that the court erred in declining to make any allowance to defendants for having "nursed, fed, clothed and schooled these appellees while they were minors." We are not willing to disturb the finding of the court upon this point. The district court, while refusing to permit defendants to recover for the items named, also refused to permit plaintiffs to recover anything for the rents and profits of the property during the same period of time. This disposition of that point is clearly equitable and meets with our approval.

The statement is made by defendants in their brief that the land in controversy is the homestead of defend-

ant Christiana, of which she cannot be dispossessed except by her voluntary act. The brief contains 29 specific assignments of error, none of which in any manner refers to the defense of homestead. The brief contains no argument in support of such controversy, but counsel contents himself with the mere assertion above noted. This proposition, stated concretely, is: Can a widow, whose husband died intestate while a resident of another state, remove from such state to this state, remarry here, apply to the court of the foreign state for leave to exchange land situate therein, which under the laws of that state belongs to said widow and the minor children of such decedent, for land in this state, and, upon obtaining leave so to do, fraudulently, and in violation of the terms of the order of the court, take title to such land in her own name to the exclusion of such children, then move upon the land, so acquired, with her second husband, and hold the same as a homestead, as against such children? The district court declined to so hold. We likewise decline.

Finally, it is contended that the findings and judgment of the court are not sustained by the evidence. Upon this point defendants must likewise fail. We have examined the record from beginning to end, and, were the case before us in the first instance, we could not reach a conclusion more favorable to defendants than that reached by the district court.

In one respect the decree must be modified. The court in its decree finds: "That defendants since taking possession of the land have erected valuable and permanent improvements, the present worth being $1,750, for which they are entitled to compensation." After confirming the shares of the respective parties the decree provides that the land be "divided among the parties according to their shares, provided that there be added to the share of Christiana Dingwell an amount in area equal in value to $1,750, value of improvements." This judgment is not in accordance with the finding. The improvements were placed upon the land as a whole. One-third of these im-

provements would inure to the benefit of the one-third interest of defendant Christiana herself, and only two-thirds thereof would be chargeable to the plaintiffs. Hence, there should not be added to the share of Christiana more than two-thirds of the $1,750. Otherwise, the plaintiffs would be paying out of their two-thirds the entire present value of the improvements. The defendants jointly made the improvements, and are therefore jointly entitled to the $1,750 allowed therefor. They jointly received the benefit of the $900 mortgage, and should jointly be required to pay the same. They also jointly received the benefit of the use of the land for which an allowance of $239.39 was made to each of the plaintiffs, and should jointly be required to pay those sums. This being true, then, when the land is sold by the referee (he having reported and the court having found that the land cannot be divided), the proceeds of the sale should be applied as follows: First, to the payment of the costs of this suit; second, to the defendants the sum of $1,750 for the improvements, less the sum of $239.39 to be paid to each of the plaintiffs. The balance of the proceeds of the sale, after deducting the said sum of $1,750 (the land being sold subject to the $900 mortgage), should be divided between the plaintiffs and defendant Christiana by paying to said defendant one-third of such balance, less the amount due upon the mortgage; and the residue divided between the plaintiffs, share and share alike. As thus modified, the judgment of the district court is affirmed.

AFFIRMED AS MODIFIED.

SEDGWICK, J., concurs in the conclusion.