JOHN T. BAUGHAN, APPELLEE, V. RICHARD E. SCHUELKE, APPELLANT.

FILED JULY 15, 1921. No. 21716.

1. **Contracts:** REFORMATION: JURISDICTION. Where the plaintiff properly brought an action before a court of equity for the reformation of a written instrument, and in the same action sought to recover a money judgment against the defendant upon said instrument so reformed, and the defendant objected to the jurisdiction of the court and moved that the case be transferred to a law docket and the defendant be awarded a jury trial, but without making any offer to consent that the instrument in question might be corrected as requested, but, on the contrary, opposed it by objections and exceptions thereto, *held* that the court, having properly acquired jurisdiction over a subject-matter peculiarly cognizable before a court of equity, might lawfully retain the case for all purposes and proceed to a final determination of all matters, whether legal or equitable, arising out of the issues presented by the pleadings before it.

2. **Brokers:** Action for Commissions: Defenses: Evidence. In a suit by a real estate broker for commissions alleged to have been earned by virtue of a written contract between himself and the owner of the land listed, one of the defenses was that the contract had expired by limitation of time, and another that it had been expressly revoked before the plaintiff produced a purchaser for the land, and the trial court found against the defendant upon both points. *Held*, upon a review of the testimony, the court was justified in so finding and the same should be sustained.

3. **Pleading:** Lost Instrument: Secondary Evidence. Where the original written instrument sued upon was in existence and in the possession of plaintiff's counsel at the time the suit was commenced, but afterwards became lost or destroyed, without the fault of, and by means unknown to, any one having the same in custody, and its loss or destruction is accounted for to the satisfaction of the court, it is not necessary for the plaintiff thereafter to amend his petition so as to declare upon a lost instrument as a prerequisite to proof of the contents of such instrument by secondary evidence.

Appeal from the district court for Lancaster county: William M. Morning, Judge. *Affirmed*.

*R. J. Greene* and *Hugh C. Wilson*, for appellant.

*Burkett, Wilson, Brown & Wilson*, contra.

Heard before Morrissey, C.J., Flansburg and Rose, JJ., Dickson and Troup, District Judges.

Troup, District Judge.

The plaintiff, as a real estate broker, claiming to have a written contract with defendant authorizing him to find defendant a purchaser for certain land belonging to defendant, on certain specified terms, for which service plaintiff was to receive a certain specified commission, and further claiming that at a time within the life of the contract upon producing a person able, ready, and willing to purchase defendant's land on the terms specified, defendant refused to sell and likewise refused to pay plaintiff his commission, and plaintiff thereupon preparing to bring suit for his commission discovered that his broker's contract was defective in that, by mutual mistake of the

parties, a misdescription of the land had been inserted, instituted this action in equity for a reformation of the contract in that respect, and at the same time and in the same action asked to recover his commission upon the contract so reformed. The defendant objected to a trial to the court upon the right of plaintiff to recover commission and demanded a jury for the trial of that issue. Upon the demand being overruled, the defendant answered denying that he ever entered into the contract set forth in plaintiff's petition or agreed to the terms therein specified. Upon a trial of the case the court found generally for the plaintiff, reformed the contract in the particular required, and rendered judgment for plaintiff for his commission. The defendant appeals.

It does not appear that at any time, either before or after plaintiff's action was instituted in the equity court, the defendant agreed, or offered to agree, that the contract in question might be corrected or reformed as plaintiff desired. Whether the misdescription in the contract of the property listed with plaintiff for sale would have greatly embarrassed, if not entirely defeated, plaintiff in an action at law upon the contract, as it stood without reformation, was something which plaintiff could not foretell. At all events the plaintiff was not obliged to take any chances in that respect. It was certainly plaintiff's right to go into a court of equity to have his contract corrected according to the fact and the manifest intention of the parties. It does not appear that the defendant had an opportunity, before plaintiff's action was commenced, to consent that the desired correction in the contract might be made. But even after suit had been instituted in the equity court, if the defendant had frankly agreed, or offered to agree, in open court or by written admission, that the correction in the contract might be made as requested, without contest or trial upon that issue, and then appealed to the court to transfer the case to a law docket for a jury trial, it is the opinion of the writer, at least, that this court might well have held that

the trial court would have erred had it not granted the request. But such is not the case here. The attitude of the defendant from the very beginning, as disclosed by the record, was to deny everything. He not only denied the right of plaintiff to reform the contract, but he denied the very existence of the contract itself and vigorously contested its reformation by objections to the evidence upon almost every point. Under these circumstances it is impossible to say that the plaintiff did not act both lawfully and wisely in seeking a reformation of his contract in a court of equity. The plaintiff having a right to bring the action in the court he did, and the court having properly acquired jurisdiction over the parties and the subject-matter, it had the right to retain the case for all purposes and proceed to a final determination of all matters, whether legal or equitable, arising out of the issues presented by the pleadings before it. This rule is so well and universally established, and the reported decisions show that the right under the rule has been exercised in almost every variety of case, that it would seem needless to cite authorities in its support. A few only must suffice: *Bank of Stockham v. Alter,* 61 Neb. 359; *Disher v. Disher,* 45 Neb. 100; *Bell v. Dingwell,* 91 Neb. 699; *Kelly v. Galbraith,* 186 Ill. 593; *Union Central Life Ins. Co. v. Phillips,* 102 Fed. 19; 16 Cyc. 106-109.

Upon the issue as to plaintiff's right to recover for commission, the defendant claims that the time in which plaintiff was given to produce a purchaser was limited to ten days from the listing of the property, and that the clause appearing in the written contract giving plaintiff six months in which to do so was inserted by the plaintiff without the knowledge or consent of the defendant. We think there is no merit in this contention. In the first place, it is altogether improbable that any real estate broker would go to the trouble of entering into a written contract for the privilege of producing a purchaser for land with only a ten-day period in which to do so. Certainly this would seem to be true unless the broker already

had a purchaser in view who was, or at least was sup-
posed to be, ready, able, and willing to make the purchase
without delay.   But no such circumstance appears in this
case, nor in our opinion was it contemplated by either
party.   More than five months elapsed after the signing
of the contract before the plaintiff was able to produce a
purchaser for defendant's farm.   It is in evidence that
the plaintiff had more or less negotiations with the de-
fendant respecting the sale of his farm during a period of
three years prior to entering into the contract in ques-
tion.   The plaintiff, upon being asked how it come that
the present contract was entered into, testified:   "Mr.
Schuelke came into my office with reference to selling his
place, and I told him that he had his place pretty high,
and that he changed his mind so often on it that I
wouldn't handle it any longer unless he would give me a
written contract.   He says, 'I will give you six months
on it at $200 an acre,' and I says, 'Will you sign a con-
tract?' and he says, 'Yes;' and the result was he signed a
contract on it for six months time at $200 an acre."   The
defendant himself testifies that the contract was read
over to him at the time it was prepared, and that he
signed it, and he does not claim that any fraud or decep-
tion was practiced upon him, either in the drafting or the
reading of said contract, or, if he does, there is no evi-
dence to support such claim.

Nor do we think the defendant's claim that he revoked
the contract before plaintiff had produced a purchaser is
supported by the weight of evidence.   Indeed, it would
seem that the weight of the evidence is against such claim.
The defendant testifies that in May, a month before plain-
tiff produced a purchaser for the farm, he told plaintiff
that his place was not for sale.   This is expressly denied
by the plaintiff.   Resting thus it would seem to be a ques-
tion of veracity between the plaintiff and defendant as to
which one was speaking the truth in this respect, but cir-
cumstances occurring in subsequent events lead us to be-
lieve that the defendant is mistaken upon this point.   In

June when the plaintiff and the proposed purchaser were at defendant's home, first for the purpose of looking over the farm, at which time they agreed with the plaintiff to take it, and three days later, for the purpose of completing the purchase, the defendant at no time placed his refusal to consummate the sale on the ground that plaintiff's contract to find a purchaser had expired or been revoked. Nor did this fact seem to be mentioned or referred to. On the first occasion, upon being told by the plaintiff that he had the Munns out looking at the farm with a view to selling it to them, the defendant said, as testified to by plaintiff, "He didn't care much about selling the farm now." Upon being told by plaintiff that, if he did not care to sell, it was all right with him, and he would take 1 per cent. for his commission, instead of 2 per cent. called for by the contract, but if the Munns bought he would have to pay 2 per cent., the defendant replied, according to plaintiff's evidence, "I will take my chances, I do not think they will buy it." The defendant denies making the latter statement. On the second occasion the defendant became a little more emphatic, and upon being told that Mr. Munn, the proposed purchaser, had come over to complete the purchase of the farm, the defendant testified, "He can't have it," that the farm was not for sale—"absolutely, it wasn't for sale;" but at no time on these occasions did defendant claim to plaintiff or the proposed purchaser that plaintiff had no authority to negotiate for a sale of his farm. It is true that in this connection the defendant testified that he had told the plaintiff, on a previous occasion, that his farm was not for sale; which is denied by the plaintiff, but the point, as bearing upon the credibility of the defendant's claim in that respect, is that he did not make that claim known on either of the occasions in June when it was incumbent upon him to assign a reason for his refusal to sell.

These parties were both before the court in person, the judge heard their testimony and witnessed their manner

of testifying and was best able to determine the probable truth of their respective statements. The court resolved the disputed question of revocation in favor of plaintiff, and we are of the opinion that the evidence justifies the finding.

It appears without serious dispute that the original contract sued upon was in existence and in the possession of plaintiff's attorneys at the time they prepared and filed plaintiff's original petition in the case, to wit, August 13, 1919, and to which they attached what purported to be a true copy of the card form of said contract, and also at the time plaintiff's amended petition was prepared and filed, November 8, 1919, in which is set forth what purports to be the contents of said contract, and also, apparently, attached to said amended petition a card copy of said contract. Thereafter, and some time before the trial of said case, it appears that the original contract became lost or destroyed. No fraud or deception was charged or attempted to be proved against either the plaintiff or his counsel as a reason for withholding or concealing the original contract, and without the slightest doubt it was a *bona fide* case of where the instrument had disappeared beyond recovery without the intentional act or fault of any one who had its custody.

At the trial, and after accounting for the loss or destruction of said instrument to the satisfaction of the court, plaintiff was permitted to introduce secondary evidence as to its contents by oral testimony and by the use of the card form copy above referred to. The defendant objected to the introduction of secondary evidence to prove the contents of the contract without first requiring the plaintiff to amend his petition so as to declare upon a lost instrument, and that a resort to such evidence constituted a material variance between the allegations of the petition and the proof. We do not believe this point is well taken. It is true that the case of *Chamberlain v. Sawyer*, 19 Ohio, 360, cited by the defendant, and the only one in point, seems to sustain the

defendant's contention. But this case cannot overcome the long and uniformly established practice in this country to the contrary. The Ohio court evidently based its decision upon the old English case of *Smith v. Woodward*, 4 East (Eng.) 585, the only case cited in the opinion, and in doing so we think must have overlooked the case in our own country of *Renner v. Bank of Columbia*, 22 U. S. 581, in which the supreme court of the United States announced a contrary doctrine. The case last cited was a suit upon a promissory note which appeared to have been lost, although perhaps not destroyed, and secondary evidence was admitted as to its contents. In speaking of the exceptions taken by the defendant to the ruling of the trial court in this respect, Justice Thompson, in delivering the opinion of the supreme court of the United States, said:

"It is objected, lastly, that secondary evidence was not admissible, without a special count in the declaration upon a lost note. The English practice on this subject has not been adopted in this country, so far as our knowledge of it extends, and to require a special count upon a lost note, would be shutting the door against secondary evidence, in all cases where the note was lost, after declaration filed. We do not think any danger of fraud is to be apprehended from the admission of such evidence, under the usual count upon the note; and, the practice in the court below not requiring a special count in such cases, no error was committed in the admission of the evidence."

The case of *Board of Supervisors of Livingston County v White*, 30 Barb. (N. Y.) 72, was a suit upon the bond of a defaulting county treasurer for the sum of over $28,000. The defendant denied the execution and delivery of the bond sued on. It appeared that the bond had been lost sometime before the trial, and secondary evidence was admitted to prove its contents. At the close of plaintiff's testimony the defendant moved for a nonsuit on the ground, in substance, of a failure of proof

to sustain plaintiff's cause of action. The motion was overruled and judgment rendered against the defendant. On appeal to the supreme court of New York that court said:

"It was not necessary to allege in the complaint the loss of the bond, to entitle the plaintiff to prove its loss and give secondary evidence of its contents. Under the former system of pleading, in cases like the present, profert of the bond, or an excuse for the omission of profert, in the declaration, was required, and if the declaration contained the usual statement of profert, and the defendant pleaded *non est factum,* the production of the bond at the trial could not be excused by proof of its loss previous to declaring; but the doctrine of profert has no place in the present system of pleading, ample provision otherwise existing for the production and inspection of papers. Independent of profert, there never was any necessity or reason for saying anything about the loss of the bond, in stating the cause of action."

The above decisions undoubtedly state correctly the rule of practice that generally prevails in this country on the point in issue as it arises in cases under circumstances similar to those existing in the cases last-above cited, and which rule in all its force applies to the case at bar.

Having covered all of the points complained of in appellant's brief, and finding no reversible error in the record, the decree of the district court is

AFFIRMED.