Wiseman v. Guernsey.

---

MAUD M. WISEMAN, APPELLEE, V. SUSIE GUERNSEY ET AL., APPELLANTS.

FILED FEBRUARY 16, 1922.    No. 21898.

1. **Adoption:** RIGHT OF INHERITANCE. The only manner by which the right of inheritance can be conferred by an adopting parent upon a child is by a legal adoption, conducted in substantial compliance with all the essential requirements of the statute.

2. ———: ———: ORAL CONTRACT. Even where there is no legal adoption, an oral contract to adopt a child and make it an heir, when saved from the operation of the statute of frauds by part performance, may be enforced in equity by awarding to the child an equivalent of such inheritance.

3. ———: EVIDENCE. A contract to adopt a child and make him an heir can only be proved by the most clear, satisfactory, and convincing evidence.

4. ———: ———. Evidence examined, and *held* insufficient to show a contract to adopt and make the child an heir.

5. ———:· DEED OF ADOPTION: CONSTRUCTION. Where the deed of adoption in a statutory adoption proceeding, under sections 796-801, ch. 57, Gen. St. 1873, confers a right of inheritance upon the child, adopted by that proceeding, but on condition that her inheritance shall not exclude from sharing in the estate another child, who has been taken into the home by the same parents, but by no legal adoption, and provides that the legally adopted child shall share equally with the other child all rights in the estate accruing to her, *held*, that there was an implied promise, on the part of the legally adopted child, arising from an acceptance of the statutory adoption, to carry out that condition, and that, after the adopting parent had died and the legally adopted child had become an heir to the estate to the exclusion of the other, upon her repudiation of the promise, in a suit claiming the entire title, she would be declared a trustee *ex maleficio* as to the property share which it was intended that the other child should take.

6. **Trusts:** IMPLIED AGREEMENT. Where a trust *ex maleficio* is based on a promise, the promise need not be expressly made, for actual cooperation or silent acquiescence may have the same effect.

7. ———: REPUDIATION: FRAUDULENT INTENT. Where the trust is repudiated, it is not necessary to show that the promise upon which it is based was fraudulently made, with no intention of carrying it out. A fraudulent intent, on the part of the promisor in making the promise, may be inferred from his repudiation and a refusal to perform.

8. **Limitation of Actions:** TRUSTS. Where a party comes into a court of equity asking affirmative equitable relief, he may be required to do equity with regard to the subject-matter of the action; and the statute of limitations is not available to him as a defense against the imposition of such requirements.

9. ———: ———. Where a party asserting title to property is proved to be a trustee *ex maleficio* for the adverse party to the suit, *held*, that the statute of limitations did not commence to run against the rights of the *cestui que trust* until the trustee repudiated the trust, since until that time the fraud ·had not become known.

APPEAL from the district court for Buffalo county: BRUNO O. HOSTETLER, JUDGE. *Reversed.*

*John N. Dryden* and *John A. Miller,* for appellants.

*H. M. Sinclair* and *W. D. Oldham, contra.*

Heard before MORRISSEY, C.J., ALDRICH and FLANSBURG, JJ., ALLEN and MORNING, District Judges.

FLANSBURG, J.

This action involves title to a farm in Buffalo county, Nebraska, constituting the estate of Anthony Shovel, deceased. The plaintiff, Maud M. Wiseman, the adopted daughter of Anthony Shovel, claims the entire estate, and brings this action to confirm and quiet the title as against any interest which might have been claimed by James Shovel, a child taken by the Shovel family and reared as a member of the family, but never legally adopted. The trial court entered a decree quieting the title in the plaintiff, and from this decision the

Wiseman v. Guernsey.

defendants, representatives of James Shovel, have ap-
pealed.

Anthony Shovel and his wife were early settlers in
Buffalo county. They never had children of their own.
In 1875 they took into the family a little waif, which
they procured at an orphan's home in St. Joseph. The
name of this child was Jim McManus and he was then
eight years old. The child took the name of James
Shovel, was always known by that name, and was gen-
erally reputed to be a child of the family. In 1882,
when James was 15 years old, the Shovels, by statutory
procedure, adopted a litle girl. She is now the plaintiff
in this action. The adoption agreement, filed in the
county court in that proceeding, contained these pro-
visions:

"Whereas, the above named Anthony and Susan Shovel
have in fact adopted James, the orphan child of Thomas
and Mary McManus late of the state of Missouri, de-
ceased, who was born on the fifth day of January, 1867,
and have for seven years last past nursed and reared
him under their name and as their child, and whereas,
the said Anthony and Susan Shovel desire to bestow
upon the said James equal right, privileges and im-
munities with children born in lawful wedlock, and
whereas, there is some difficulty about the statutory
adoption of the said James for the want of any parent
or other person having lawful custody of said James,
to sign the necessary relinquishment.

"Now, therefore, the adoption of the said **Maud May**
and investing her with equal right, privileges and im-
munities as children born in lawful wedlock, shall not
be taken or construed to invest her with any rights, or
inheritance to the exclusion in whole or in part of the
said James, but the said James shall always - share
equally with the said Maud May in any and all rights
and privileges accruing to her by virtue of this adoption."

**James** was reared as a child of the family and re-
mained upon the farm, performing all services allotted

to him, until he was about 23 years old. He was then married and one year later removed to a nearby farm and became a tenant there. Two children were born of this marriage, one in 1892 and one in 1893. In 1893 his wife died. He then returned to the Shovel home and remained there until 1900, when Anthony Shovel, the foster parent, died intestate. James lived 14 years after the death of Anthony Shovel, and in 1914 he died intestate, leaving the two children mentioned as his only heirs. These children are the defendants in this case. Since the death of Anthony Shovel neither had James Shovel during his lifetime, nor have the defendants ever, until the commencement of this suit, made claim of any right or interest in or to the property of the estate. Mrs. Susan Shovel, the widow, having a dower interest in the land and right of possession, on October 2, 1919, being then 83 years of age, made a deed conveying all her interest to the plaintiff, and a few days thereafter, some 19 years having elapsed since the death of Anthony Shovel, plaintiff filed this suit to quiet title as against any interest in the estate which the defendants, as representatives of James Shovel, might claim.

The defendants' claim of interest in the estate, raised in their answer, is based upon two theories:

(1) That the evidence is sufficient to show an agreement, on the part of the Shovels, to adopt James, and make him an heir, the performance of that agreement by James and the right, in his representatives, to a specific performance of that contract; and

(2) That the written agreement, made a part of the statutory adoption of Maud, was upon the express condition, contained therein, that James should share equally in whatever inheritance should be received by Maud, that such condition was necessarily assented to by Maud, and that her repudiation of the implied promise to carry out that condition and the expressed desires of the adopting parents results in her becoming a trustee

*ex maleficio* of the interest in the property which it was intended James should take.

It is admitted that there was never any statutory adoption of James. It must be conceded, therefore, that he never became an heir of the estate and has no right of inheritance. Heirship cannot be created by contract, but by law only. The right of inheritance could only have been conferred upon James by a legal adoption conducted in substantial accordance with all the essential requirements of the statute. 1 C. J. 1373, sec. 4.

It is claimed that the evidence in this case is sufficient to prove a contract to adopt James and to make him an heir; that this contract had been performed on his part, and that, even though he should not be entitled to inherit under the law, still a court of equity should consider that done which should have been done, and award to him an equivalent of such inheritance by way of decreeing a specific performance of the agreement. *Pemberton v. Heirs of Pemberton,* 76 Neb. 669; *Kofka v. Rosicky,* 41 Neb. 328; *Tuttle v. Winchell,* 104 Neb 750; 1 C. J. 1377, sec. 21.

We have carefully examined the evidence in the case and find little more to sustain such an agreement than that which is set out above. Every element of such a contract must be proved by the most clear, convincing, and satisfactory evidence. *Peterson v. Bauer,* 83 Neb. 405. The defendants contend that such an agreement is to be inferred from the statements by the Shovels that they had adopted James, which admissions had been made to certain persons who testified as witnesses in the case, and from their declaration in the articles of adoption of Maud, to the effect that they had, in fact, adopted James, and that they desired to bestow upon him the right of inheritance. The defendants claim that these facts, in connection with a showing that James was reared as a member of the family and took the family name and a relation in the family as if he had been adopted, are sufficient to prove, beyond question,

an agreement to adopt and to make James an heir. They rely upon the case of *Roberts v. Roberts,* 223 Fed. 775. The statutes in Missouri, however, are different from those which existed in Nebraska. In Missouri, the right of inheritance followed as a matter of course whenever a child was adopted. In Nebraska, a child, under the law of 1873, might have been adopted and yet, unless there was a specific agreement to that end, would not become an heir. Though the fact of adoption, when proved, would imply that there had been an agreement, either with the child, or with its natural parent or guardian, for adoption, since the matter of adoption requires an agreement and cannot be effected by actions on the part of the adopting parents alone, still such admitted fact of adoption would not necessarily imply, in this state at least, that the parties had agreed that the right of heirship was to be conferred. A declaration by the Shovels that they desired to bestow the right of heirship on James may have been no more than a mere avowal of their wishes and intentions. There is nothing in the record showing that such a declaration of intention is referable to any contract. *Overlander v. Ware,* 102 Neb. 216.

It seems clear to us that James neither had a right of inheritance in the estate of Anthony Shovel, nor had he any right of action for any breach of contract for adoption. His rights must depend entirely upon the written agreement entered into by the Shovels in the adoption proceedings of Maud.

The statutes governing this proceeding (Gen. St. 1873, ch. 57, secs. 796-801) did not provide that an adopted child should always receive rights of inheritance, but left that matter to the agreement of the parties. A person was granted the right of adopting a child "with such limitations and conditions as shall be agreed upon." The statute provided that a person could, by stipulation in his adoption statement, bestow upon the child rights of inheritance, and it was provided that the decree in

such case should be entered in accordance "with the conditions and stipulations of said statement." The child, it was declared, should then possess those rights and privileges as were agreeable to such stipulations. In such adoption proceeding, then, the adopting parent had a right to withhold all rights of inheritance or to bestow upon the child rights of inheritance with the limitations or conditions that he should desire to attach. Though a right of inheritance, conferred through contract by such adoption, would become a statutory right and be governed by the statutes on that subject, still its bestowal and the limitation of the right, or the conditions upon which it was granted, were left as a matter of contract between the parties to the proceedings.

In *Martin v. Long*, 53 Neb. 694, the contractual character of such proceeding is indicated, and in that case it was held that the parties could, by the adoption agreement, legally provide that the adopted child should receive, at her majority, from the adopting parents the sum of $500. The statute, as interpreted by this decision, contemplates the right of the parties to regulate and define and limit or supplement the rights of the child in the estate of the adopting parents. The written contract and statement of adoption, filed in the proceedings in the adoption of Maud, was a contract that has a statutory sanction.

The defendants contend that this contract created an express trust in favor of James; that it clearly provided that Maud was to share equally with James whatever she should inherit from the estate, and that such trust, being created by a contract which is given legal recognition by the statute, would be enforceable even though it might, in the absence of the statute, be held bad because of its testamentary character. The solution of that question would involve a determination as to how far parties to such adoption proceedings may fix and determine the rights of inheritance and property rights of others than the adopted child. Though

it may be, under the circumstances here, that the fixing of the rights of James was incidental to and inseparably connected with the limitation of the rights of Maud, and that such provisions come within the scope of the statute, we believe it unnecessary to pass upon that question, for reasons as subsequently appear.

The defendants contend that, in any event, the bestowal of the right of inheritance upon Maud was conditional and was offered and accepted only upon the implied agreement that the condition would be performed, and that, after having become, through the implied promise that the condition would be performed, entitled as an heir to an entire interest in the estate, she cannot now be allowed to repudiate the promise, and that her repudiation results in making her a trustee *ex maleficio,* to the extent of that interest in the property which it was intended should be conferred upon James.

Whether or not the written agreement was sufficient, as a contract, to create an express trust, in favor of James, which would be impressed upon the property received by Maud by inheritance, it is our opinion that, in any event, equity will recognize a constructive trust and enforce it. The intention of the parties, set forth in the written instrument, is clear. The adopting parents recited that they had desired and attempted to adopt James, but that their adoption was defective and that they were unable to legally adopt him. For that reason, it seemed they believed, he either had no legal right to inherit or that his right of inheritance was questionable. A right of inheritance they desired to bestow upon him, and they expressed their intention that he should inherit equally with Maud, and that her inheritance should never in any way cut down or affect his. The agreement even goes farther and states that James shall share equally with Maud in any and all rights and privileges accruing to her. The condition, which has now actually come about, is the very condition that the articles of agreement sought to guard against.

Maud has inherited the entire estate to the exclusion of James and has refused to allow him to share with her. The adopting parents recognized that, in making Maud their heir, it was probable that she would be legally entitled to inherit to the exclusion of James. The condition that she should share what she should inherit was inseparable from the adoption agreement, and it was evidently upon that condition only that the Shovels were willing to adopt her. In consenting to this adoption, she, and her parents in relinquishing her, accepted the agreement bestowing upon her the right of inheritance as well as the burdens and conditions which accompanied it. Their acquiescence in that condition is equivalent to an implied promise that the condition would be performed. Such a representation having been made, Maud cannot now be allowed to take an inheritance, procured by means of that representation, and then repudiate the obligation assumed by her. To allow her now to repudiate the trust would, in effect, work a fraud upon Anthony Shovel, her adopting parent.

A clear statement of the rule is found in 39 Cyc. 177: "Where a testator or ancestor makes known to his devisee, legatee, or heir his desire that his property be disposed of in a particular manner, and that he relies upon him to carry his desire into effect, and such devisee, legatee, or heir uses words or does acts calculated to cause, and which he knows do in fact cause, the testator or ancestor to believe that he fully assents thereto, and where in consequence thereof the testator or ancestor makes * * * a will or such particular disposition of his property in his lifetime as will carry out his desire, a constructive trust is created." It is that principle which is recognized in the decisions of our court in *Smullin v. Wharton,* 73 Neb. 667; *Schneringer v. Schneringer,* 81 Neb. 661; *Pollard v. McKenney,* 69 **Neb.** 742; *Crinkley v. Rogers,* 100 Neb. 647.

It is argued that such a rule has no application unless there is fraud in the inception of the transaction; that

is, unless the promise to carry out the request of the ancestor was fraudulently made and without any intention of carrying it out. In the cases just cited, however, such fraud was neither alleged nor proved, and in the case of *Pollard v. McKenney, supra,* where the promise was between persons who were in a confidential relation and the promise had been repudiated, the court declared that it was immaterial whether or not there had been, at the time of the promise, an actual present intention that the promise would not be carried out. Where there is a refusal to perform such a promise, as in this case, a fraudulent intent on the part of the promisor in making it may be inferred. *Winder v. Scholey,* 83 Ohio St. 204, 33 L. R. A. n. s. 995. And see note, 8 L. R. A. n. s. 703.

It is our conclusion that the plaintiff should be held as a trustee *ex maleficio* of the property inherited from Anthony Shovel, and that the obligation of her trust is to share such property with the children of James Shovel, so that they shall receive that share in the estate which the articles of agreement, entered into at the time of her adoption, prescribed should be shared with James.

Plaintiff pleads the statute of limitations as a bar to any claim of interest by the defendants to the property in question. The defendants, however, did not bring this action to establish a constructive trust in the property, but have set up such a trust in defense of the plaintiff's action. The plaintiff claims under the agreement in the articles of adoption by which she was made an heir of the estate. The defendants' answer asserts, by way of defense, that the plaintiff is a trustee *ex maleficio.* The effect of that defense is to define and limit that title interest which the plaintiff claims. The statute of limitations would not be available to the plaintiff to prevent such a defense. *Pinkham v. Pinkham,* 61 Neb. 336; *Bank of Alma v. Hamilton,* 85 Neb. 441; *Pettit v. Louis,* 88 Neb. 496.

Though 19 years have elapsed since the death of Anthony Shovel, it appears that Susan Shovel, his

widow, is still living and had become entitled to a dower interest and possessory rights in the property. During her lifetime there was no urgent reason why the matter of the interests of the plaintiff and the defendants should be settled. There is no suggestion that the plaintiff ever repudiated the trust or denied that James Shovel or his heirs were entitled to an interest in the estate, until the commencement of this suit. It was not until that time that the defendants became apprised of the fact that she was attempting to exclude them from the inheritance and that she did not intend to carry out the implied promise contained in the adoption agreement. It is not suggested that the defendants were aware of her attitude prior to that time, nor that they were guilty of any laches in failing to assert their rights. The statute of limitations does not begin to run against the rights of the beneficiaries of such a constructive trust until they are apprised of the fact that the trustee did not intend to carry out the provisions of the trust. In this case, they were not apprised of that fact until the trustee repudiated it. The statute of limitations, therefore, had not run against the claim of the defendants. *Hanson v. Hanson,* 78 Neb. 584; *Johnson v. Petersen,* 100 Neb. 225; *Winder v. Scholey, supra.*

For the reasons given, the judgment of the trial court is reversed and the cause remanded for further proceedings in accordance with this opinion.

REVERSED.