JANE SOWER, APPELLANT, V. HENRY A. WELLS ET AL.,
APPELLEES.

FILED DECEMBER 31, 1923.   No. 22568.

Specific Performance: ADOPTION: PAROL CONTRACT: SUFFICIENCY OF
EVIDENCE. In this suit in equity to establish and enforce an
alleged oral contract to adopt a minor and make her an heir,
the substance of the evidence is set out in the ᴜpinion, and *held*
insufficient to support the plaintiff's cause of action.

APPEAL from the district court for Merrick county:   A.
M. POST, JUDGE.   *Affirmed.*

*J. C. Martin* and *Patterson & Patterson,* for appellant.

*Elmer E. Ross, contra.*

Heard before MORRISSEY, C. J., LETTON and DAY, JJ.,
REDICK, District Judge.

MORRISSEY, C. J.

Plaintiff filed her petition in the district court for Merrick county alleging in substance that in 1879, when plaintiff was a child ten years of age, her mother being deceased, an oral contract was entered into between her father, John Horn, and one Henry C. Wells, now deceased, whereby it was agreed that the father of plaintiff should surrender all control over her to Mr. Wells and that Mr. Wells and his wife should adopt plaintiff and rear her as their own child, and that she should be given equal social and property rights with the children born in lawful wedlock to Mr. and Mrs. Wells. The petition alleges full performance on the part of plaintiff and her father, and alleges that pursuant to this oral agreement plaintiff's father surrendered possession and control of plaintiff to Mr. and Mrs. Wells and never thereafter exercised any control over her. That in October, 1879, plaintiff was taken into the home of Mr. and Mrs. Wells and remained there for a period of five years, when she was, by Mr. and Mrs. Wells, taken to the home of her uncle and never thereafter taken into the home of Mr. and Mrs. Wells. That in pursuance of the oral agreement made between plaintiff's father and Mr. Wells together they went into the county court of Merrick county on or about November 14, 1879, for the purpose of inaugurating the proceedings necessary to effect the statutory adoption of plaintiff; that plaintiff's father executed a proper relinquishment of his control over plaintiff and his consent to her adoption by Mr. Wells. A copy of this relinquishment is attached to the petition and the original paper is found in the bill of exceptions. It is alleged that on that occasion Mr. Wells filed in the county court an application to adopt plaintiff in form sufficient to confer upon her the full property rights of a child of his body; that the application of Mr. Wells has been lost or stolen from the files and cannot now be found; that it never was recorded by the county judge, but that a proper notice of the application was published in a legal newspaper in Merrick county and due proof of its publication was filed. A copy of the notice is attached to the

petition. It is alleged that the fee book kept by the county judge shows that Mr. Wells paid as a fee the sum of $2.95 for "adoption papers," but that the county judge through oversight or neglect failed to record or enter a decree after its rendition; that Mr. and Mrs. Wells recognized plaintiff as their foster child and treated her as having been fully and legally adopted; that she remained with them in their home as a foster child and was known by the name of Jennie Wells from October, 1879, for a period of five years, and during that period rendered unto Mr. and Mrs. Wells the services of a daughter and submitted in all things to their control; that during the period covered by plaintiff's residence with Mr. and Mrs. Wells plaintiff was assured by them that she was their adopted child, and plaintiff relied upon such assurances. It is alleged that the estate of Mr. Wells is in course of administration. Certain real estate is described as forming a part of the estate, and there is a prayer that the court decree plaintiff to be the owner of a one-fifth interest therein, sharing equally with the four defendants, who are the children of Mr. and Mrs. Wells. By answer it is alleged that defendants have no knowledge of the alleged oral contract of adoption, or of any adoption of plaintiff by the father, Henry C. Wells. It specifically denies his making a parol agreement for adoption, and denies performance by plaintiff if such contract was made. The answer also alleges that, if any contract or agreement was made or entered into with relation to the adoption of plaintiff, it contained no provision bestowing property rights upon her. It is alleged that plaintiff remained in the home of Mr. Wells for five years, when she left of her volition, married within a few months thereafter, and never returned afterwards thereto or communicated with Mr. and Mrs. Wells; that she never rendered to them the services of a child or gave them her society and companionship. There was a trial to the court and a general finding for defendants. While the allegations of the petition seem to suggest that plaintiff relies both upon a legal adoption and also upon a contract to adopt, yet the form of the action is such

that we must treat this as a suit in equity to enforce the terms of the alleged oral contract to adopt, since if plaintiff's cause of action rests upon a legal adoption had in the county court she would have to proceed in that court to prove heirship, and a court of equity would be without jurisdiction to grant the relief sought. *Wiseman v. Guernsey,* 107 Neb. 647. We will, therefore, consider this as a suit in equity to enforce the alleged oral agreement to adopt plaintiff and to make her an heir. Mr. and Mrs. Wells both died intestate leaving surviving them four sons. It is not alleged that Mrs. Wells left any estate and this proceeding affects only the estate of Mr. Wells. It is chiefly upon the testimony of plaintiff that the establishment of the alleged contract to adopt depends. Plaintiff testified that about two weeks after she was taken into the home of Mr. Wells her father visited her and at that time she overheard a conversation between her father and Mr. Wells in relation to her status. It is this conversation which forms the basis for plaintiff's claim. She was asked: "Was there any arrangement made with reference to you, as to what was to be done in the future, as to whether you were to remain there?" To this she answered: "They were to arrange to adopt me as one of their own children and do with me just the same as their own children." This testimony is repeated a number of times in slightly varying form, but the substance is always the same. Mr. and Mrs. Wells and plaintiff's father all having deceased, there is no witness to either contradict or corroborate plaintiff as to this conversation. There is, however, conclusive proof that about the time of this conversation plaintiff's father, Mr. Wells, and a Mr. Cole, who had taken into his family a little sister of plaintiff, went together to the county judge of Merrick county for the ostensible purpose of effectuating the adoption of plaintiff by Mr. Wells and the adoption of plaintiff's sister by Mr. Cole. This is shown by the testimony of Mr. Cole and is in part sustained by certain entries and papers found in the county court. There is found in the bill of exceptions a paper executed by plaintiff's father November

14, 1879, and acknowledged before the county judge, whereby he relinquished all right of custody and all right of control over plaintiff to the end that she might be adopted by Mr. Wells, but the right of the plaintiff to inherit from the adoptive parent is not mentioned. This paper bears no filing mark, but there is also found the original wrapper in which the county judge encased this paper bearing the inscription: "Adoption of Jane Horn. Final settlement Dec. 6th, 1879." And apparently forming a part of the same record is a copy of a notice with proof of its publication for three consecutive weeks in a newspaper printed and published in Merrick county, wherein it is said: "In the Matter of the Adoption of Jane Horn, Minor Child of John Horn, by Henry C. Wells: After reading and considering the statement of the said John Horn filed herein, it is ordered that the same be set for hearing on Saturday, December 6th, A. D. 1879, at 10 o'clock a. m." None of these papers bears any filing mark, but they were found in the archives of the county court. And the fee book kept by the county judge shows that he received from Henry C. Wells $2.95 for "adoption papers." There is, however, no evidence that any petition for adoption was ever signed or filed by Mr. Wells, and with the exception of the papers mentioned the records of the county court are silent as to the adoption of plaintiff. So far as this record may be considered, it goes only to the corroboration of the testimony of plaintiff. And in this it shows negotiations for an adoption, but does not indicate an agreement to make a property settlement upon plaintiff. The statute on adoption which was in force at that time (Gen. St. 1873, ch. 57, secs. 796-801) conferred a right of inheritance upon an adopted child only where the articles of adoption made specific provision therfor. A person was free to adopt a child "with such limitations and conditions as shall be agreed upon." The paper signed by plaintiff's father imposes no conditions so far as property rights are concerned. And there is no evidence that Mr. Wells signed any paper having to do with the adoption of plaintiff. We are left, then, to consider the testimony of plaintiff to the

effect that Mr. and Mrs. Wells were "to adopt me as one of their own children and do with me just the same as their own children." This testimony was given 42 years after the conversation is alleged to have taken place. If it be claimed that the language is to be construed as broad enough to include an agreement that she not only be taken into the family and treated as a child, but that the adoptive parents should also confer upon her the right of inheritance, then its accuracy must be determined in the light of all the facts disclosed. Plaintiff was less than ten years of age; her mother had recently deceased; her father was in meager circumstances with a family of small children for whom he was anxious to secure suitable homes. Did he insist upon Mr. and Mrs. Wells, who were then the parents of four living children, binding themselves to confer the right of inheritance upon plaintiff, or was he content with an arrangement that admitted her into their home without the right of inheritance? Did Mr. and Mrs. Wells obligate themselves not only to rear this orphan child, but that she should share equally in their property with the four children born to them? The application signed by plaintiff's father in the presence of the county judge makes no mention of a property settlement, and to some degree it contradicts the testimony of plaintiff. The absence of any paper bearing the signature of Mr. Wells in the archives of the county court when considered with the conduct and situation of the parties, may well lead to the conclusion that, while negotiations were entered into looking to the adoption of plaintiff, no final agreement was reached. This conclusion, we think, is supported not alone by the incomplete record in the county court but by the subsequent conduct of the parties. Plaintiff remained at the home of Mr. Wells nearly five years and during that time she was enrolled as a pupil in the public school as Jennie Wells. According to her own story, she was then taken by Mr. and Mrs. Wells to the home of her uncle and not thereafter permitted to return to the home of her foster parents. Her father is shown to have been in the neighborhood, to have had knowledge of this

change in the circumstances of his daughter, and it does not appear that he taxed Mr. and Mrs. Wells with a breach of contract. And within a comparatively short time plaintiff married under the name of Jennie Horn. This course of conduct, followed by all the parties in interest, is inconsistent with plaintiff's claim of an adoption, or an agreement to adopt. Plaintiff's cause of action is not supported by that clear, satisfactory and convincing evidence which is necessary to establish the contract pleaded.

The judgment of the district court is fully sustained by the evidence, and it is

AFFIRMED.