TAYLOR *v.* BOLES, administratrix.

No. 13485. February 13, 1941.

*H. C. Denton* and *W. O. Slate,* for plaintiff.

*McElreath, Scott, Duckworth & DuVall,* for defendant.

*Hirsch, Smith & Kilpatrick* and *E. D. Smith Jr.,* as amici curiæ.

Reid, Chief Justice. In this suit against the administratrix of the estate of Alex. S. Taylor, the plaintiff sought a decree which would establish that he was entitled to inherit from the deceased in the relation of a child. His claim was founded upon a parol contract alleged to have been made between Alex. S. Taylor and the mother of the plaintiff in 1895, when they were married. It was alleged "That while petitioner was a very small child of tender years, being approximately two or three years of age, his father and mother were divorced, at which time by proper order of the superior court of DeKalb County, Georgia, where said divorce was obtained, petitioner and his only sister were awarded to his mother without any provisions being made in the final divorce verdict and decree for permanent alimony for their maintenance and support;" that "on the 3rd day of July, 1895, petitioner's mother married A. S. Taylor, with whom she lived until her death;" that "prior to said marriage, and for the protection and benefit of your petitioner and as a condition precedent to said marriage, petitioner's said mother entered into a contract with Alex. S. Taylor, whereby he agreed and contracted *in consideration of said marriage to take petitioner into his home, treat him, care for him, educate him, raise him, support him, and in every manner regard him as his own child during his lifetime.*" There were also allegations that as a part of the contract Taylor agreed to make provision for the petitioner in his will, "the same as any other child or children" which might be born to them. It was alleged that at the time this contract was made the petitioner "had previously been abandoned by his father, R. J. Suber, and that his real father did not at any time exercise any parental control over him," and that he never supported him thereafter; that after the marriage of the petitioner's mother to Taylor he entered the home of Taylor, acted and was treated as a child, and was often

assured by Taylor that he was on the same footing as the other children later born; that he went to school under the name of Taylor, and finally when he came to be married he with the aid of counsel of Taylor caused, by appropriate legal proceedings, his name to be changed from Suber to Taylor. Exhibits of these proceedings are set up, and from them it appears that an affidavit of Taylor was attached to the petition seeking the change of name, wherein he deposed that "since affiant's marriage to Emma Cawhern Suber affiant supported said George Harvey Suber until he reached years of manhood, and said George was always known by the name of affiant." The change of name was also consented to by the plaintiff's father, R. J. Suber. The allegations quoted above as to the agreement to take petitioner into his home, etc., were so amended as to state that Taylor had agreed "to adopt" him, raise, educate him, etc. These allegations together with some elaboration in the petition, it is contended, would entitle the plaintiff to the relief sought by way of specific performance. The judge sustained a general demurrer and dismissed the action.

Whether the plaintiff may prevail on the case as stated depends upon an application of the principles of law as announced in the leading case of *Crawford* v. *Wilson,* 139 *Ga.* 654 (78 S. E. 30, 44 L. R. A. (N. S.) 773), and the growing number of cases subsequently decided, with that decision as the chief precedent. The sister of the plaintiff in the present case brought a petition making a similar claim, and it was reviewed in *Boles* v. *Eddleman,* 189 *Ga.* 551. We held that under the allegations there made the petition was fatally defective in certain respects pointed out in that opinion. The ruling in that case, in so far as it dealt with the right to have specific performance of the adoption contract, rested squarely upon the proposition that it did not appear that the mother had the right to make the contract, since there was no showing that the father, if living, had lost parental control in any method provided by law. In the *Crawford* case, supra, the various objections to specific performance of a contract of this character were discussed and dealt with. Some of them are presented in this case. The problem of want of a present moving consideration between the parties, ordinarily required in matters of contract, was disposed of there, as indeed in all other cases of virtual adoption, by reliance upon allegations and proof that there had been performance by the parties to

such an extent that an equitable status had been acquired by the child. That has been the test on the question of consideration. Likewise as to the requirements of the statute of frauds, in such cases, where the facts have been considered sufficient to justify it, the contracts have been enforced by reason of performance under the contract. Requirements as to consideration have usually been met by facts showing surrender of the child by the natural parent to the adopting parent and performance on the part of the child by taking the new domestic status thus created by his surrender and his being taken into a new home, by services rendered to the adopting parent by the child in the changed status, by the filial love and affection bestowed on the adopting parent in the new relation. See *McWilliams* v. *Pair,* 151 *Ga.* 168 (106 S. E. 96); *Copelan* v. *Monfort,* 153 *Ga.* 558 (113 S. E. 514); *Ansley* v. *Ansley,* 154 *Ga.* 357 (114 S. E. 182); *Chamblee* v. *Wayman,* 167 *Ga.* 821 (146 S. E. 851); *Butler* v. *Ross,* 188 *Ga.* 329 (4 S. E. 2d, 21); *Alexander* v. *Lamar,* 188 *Ga.* 273 (3 S. E. 2d, 656). It has also been said that the fact of the surrender of the child alone, without a showing of services, etc., by the child, was a sufficient consideration as against that objection. *Chamblee* v. *Wayman,* supra. In the *McWilliams* case, supra, it was said: "The surrender of the illegitimate son by his mother to his father was a sufficient legal consideration for the contract." In other States the principle has not been carried so far.

The first essential of a contract of adoption of a child, where no statutory adoption exists, is that it be made between persons competent to contract for the disposition of the child *and be based upon a sufficient consideration.* *Rucker* v. *Moore,* 186 *Ga.* 747, 748 (199 S. E. 106). Under these principles, how does the plaintiff's case stand? It is contended that the consideration is twofold, the marriage of plaintiff's mother to Taylor, conditioned, according to the allegations, on his agreement as set out above in the statement of facts, and the status assumed by the plaintiff after the marriage. But among the contracts required to be in writing in order to bind the promisor are those made in consideration of marriage. Code § 20-401, commonly called the statute of frauds, enumerates in subsection 3, as coming within the rule, "Any agreement made upon consideration of marriage, except marriage articles as provided in chapter 54-4." Performance of the agreement by the subsequent

marriage does not take the contract out from operation of the statute. *Bradley* v. *Saddler,* 54 *Ga.* 681; *Hammond* v. *Hammond,* 135 *Ga.* 768 (70 S. E. 588). It has been held, in a situation somewhat similar to that here presented, that the contract to adopt, made in consideration of marriage, was enforceable in equity by decreeing specific performance where the marriage had been consummated. Such a .case, and the only one brought to our attention in the published reports, is Nowack *v.* Berger, 133 Mo. 24 (34 S. W. 489, 31 L. R. A., 810, 54 Am. St. R. 663), where the mother of a young child agreed to marry one Schweer, who in turn agreed to make the child his heir, and who made other agreements which the court found sufficient to constitute a contract to adopt. The Missouri court held, upon the claim of the child being presented in equity against the administrator of Schweer, that by reason of the marriage *and* services rendered by the child to the adopting parent the contract could be enforced as against the objection that under the statute of frauds it was required to be in writing, and the further objection that there was no sufficient consideration. If all that was said in that case could be by us accepted as sound and here applied, the plaintiff could prevail in the present case, assuming that his petition is not subject to any other infirmity. It is contended also that support for this view, in so far as it relates to the contract of marriage, can be found in *Bell* v. *Sappington,* 111 *Ga.* 391 (36 S. E. 780). To this we can not agree. While in the decision of the *Bell* case the fact of the marriage contract is recited in connection with other considerations, it is readily seen from an examination of the opinion that the case was determined, not upon a consideration of the marriage contract or performance under it, but upon entirely independent considerations having reference to equitable enforcement of a parol gift of realty. Likewise, in *Giradot* v. *Giradot,* 172 *Ga.* 230 (157 S. E. 282), where the court held that the contract was taken out from the operation of the statute of frauds, it based the holding, not alone upon the consummation of the marriage, but also upon the sale of certain property and change of status by the parties to the promise under the parol agreement. What would have been held upon consideration of the marriage alone does not appear, but from authorities cited above and from other examination of the law of the subject we can not conclude that consummation of a marriage would of itself have constituted any exception under the statute.

The inquiry now leads us to consider whether the other allegations of the petition, with reference to surrender of the child and performance by him in the changed domestic status resulting from his mother's marriage and from his being taken into the home of his stepfather, are, either alone or in connection with the consummation of the marriage, sufficient to meet the obstacle of want of consideration and failure to have the contract in writing as required by the statute of frauds. Although this court is committed by statements made in *Crum* v. *Fendig,* 157 *Ga.* 528 (121 S. E. 825), that the principles governing cases of virtual adoption as ruled in the *Crawford* case, supra, should not be extended, we would not hesitate to hold that in so far as these two objections now being considered (want of consideration and fact that the contract is in parol) are concerned, the plaintiff by his amended petition stated a case which would be sufficient to call for enforcement of his contract in equity, provided, of course, it were made out by proof so clearly, strongly, and satisfactorily "as to leave no reasonable doubt as to the agreement" (*Ansley* v. *Ansley,* supra), *if the adopting parent had been a person other than a stepparent.* But what might present a good case of equitable or virtual adoption against a person standing as a stranger to the child might not be so as against a person who, independently of the contract to adopt, assumed, by virtue of his marriage to the mother of the child, the very domestic relation which had been held in all the other cases to give to the child an equitable status in reference to the adoption agreement. The question at last comes down to this: In the case of such a marriage does the mother in fact surrender the child, and does the child render services because of the adoption agreement? The fact of her marriage to the new husband does not of itself affect the legal status or the legal relation of her children by the former marriage, although they had been awarded to her custody. *Glendenning* v. *McComas,* 188 *Ga.* 345 (3 S. E. 2d, 562). It is true she takes the children in these circumstances into the home of the new husband, the stepfather, but we must assume she would have done so entirely without reference to any agreement on his part to adopt. We certainly could not assume that his failure to agree to adopt the children would have caused her to abandon them. And while it is true that the stepfather as such is under no legal obligation to support the stepchildren, the point we seek to make clear

is that his consideration or generosity in allowing these small children of his wife's former marriage whose custody had been by decree awarded to her to enter their newly constituted home would be but natural on his part. Certainly it would not be unusual. See *Wood* v. *Wood,* 166 *Ga.* 519 (5) (14 S. E. 770). As we have before pointed out, some of the decisions which have allowed performance of these contracts have rested on services performed by the children to the adopting parent. Although in the strictest legal sense relation of parent and child for some purposes does not exist between stepfather and stepchild; yet in so far as the character of services just referred to is concerned it would seem but natural that the child in his minority would render those usual services in and about the home to the stepfather and bestow perhaps the same degree of filial affection in the absence of a contract to adopt as he would if it were in pursuance of such a contract.

So far as the status of the mother is concerned, she yields no custody or parental control, but indeed is better enabled to retain it. Giving effect to all natural reasoning on the subject, it would seem that so far as change of domestic status is concerned it would not necessarily be affected in anywise by the alleged agreement to adopt; and if that be true, allegations setting up change of status or performance by the child (where they appear as limited as they do in the allegations of the plaintiff's petition in this case) would not, in our judgment, be sufficient to state a consideration for the contract. Therefore they could add nothing to the consummation of the marriage; and since the marriage would not hold as a consideration, the two elements taken together would not supply one. The same may be said in so far as these elements are needed to take the case out of the operation of the statute of frauds. In the present case, as has been seen, the child took the name of the stepfather, but this was not conclusive. At best it was but a mere circumstance which might have been received in proof if the contract were sufficient to be put in issue. See Baker *v.* Payne (Mo.), 198 S. W. 75. These views it seems to us are not only supported but required by the rule universally recognized, that specific performance of parol contracts under the various circumstances where permitted is granted only in those cases which are made out by proof that is clear and convincing. "Alleged parol contracts of the character of that here involved, by which the property of a

man is taken from his estate after his death, or the inheritance of his heirs—perhaps his wife and children—is to be reduced or destroyed, should be clearly made out. In *Russell* v. *Switzer, 63 Ga.* 711, 725 (after citing certain cases) Bleckley, J., said: 'None of these cases, however, are in point on the present discussion, further than they bear upon the requisites of general law concerning the fact of contract and the fulness and certainty of the evidence by which it is sought to be established. They inculcate a wholesome caution against building up imaginary contracts out of the expression of generous intentions towards persons who, having rendered service, prefer claims for compensation after those whom they served have been removed by death.'" *Lansdell* v. *Lansdell,* 144 *Ga.* 571 (87 S. E. 782). That contracts of such nature to be enforceable on specific performance in equity "must be definite and specific . . and the proof of such contract be clear, strong and satisfactory" has been many times ruled and is well reasoned in the case of *Bird* v. *Trapnell,* 149 *Ga.* 767 (102 S. E. 131). Likewise, in *Pair* v. *Pair,* 147 *Ga.* 754 (95 S. E.. 295), enforcement of such contracts in equity was conditioned upon their being definite and specific, their being based upon sufficient legal consideration, and that the proof must be strong, clear, and satisfactory. Not all of these cases dealing with this rule of course have been considered on demurrer as is the present case, but the various statements of the principle are useful in measuring the force of plaintiff's allegations which are in the borderline territory; that is, those allegations for instance that leave us to speculate whether these services performed by the child would have been rendered entirely without regard to the adoption contract.

Not only must the contract itself be definite and specific and established by proof that is clear, strong, and satisfactory but the performance relied upon to constitute an exception under the statute of frauds must be shown to have been done *in pursuance of* and *in accordance with* the terms of the contract. In *Crum* v. *Fendig,* supra, it was said: "But virtual or equitable adoption must be founded upon a contract and performance *in accordance with the terms of the contract* by the person claiming to have been adopted." (Italics ours.) "The part performance which will withdraw such a contract from the ban of the statute must consist of an act or of acts which it clearly appears that the performing

party would not have done in the absence of the agreement or without a direct view to its performance." 25 R. C. L. 587, § 191. "The part performance relied on to take the case out of the statute must have been done strictly with reference to the contract; if referable to anything else it is not available." 27 C. J. 347, § 429. In Williams v. Morris, 95 U. S. 444 (24 L. ed. 360), these statements with reference to the rule are found: "It is not enough that the act or part performance is evidence of *some* agreement; but it must be unequivocal and satisfactory evidence of the *particular* agreement charged in the bill or answer. Phillips v. Thompson, 1 Johns. Ch., 131; Browne, Frauds, § 452. . . Courts of equity hold that clear proof of the contract and of the acts of part performance will take the case out of the operation of the statute if the acts of part performance were clearly such as to show that they are properly referable to the parol agreement. Chit. Cont. 10th ed. 66 and 278; 1 Story, Eq. Jur., 9th ed., § 761." See also Emmel v. Hayes, 102 Mo. 186 (14 S. W. 209, 11 L. R. A. 323, 22 Am. St. R. 769); Parks v. Burney, 103 Neb. 572 (173 N. W. 478, 479). In *Schadmann* v. *Durrence, 37 Ga. App.* 640 (141 S. E. 331), it was said of such contracts: "But in such a case the acts relied upon by the party seeking to take the oral agreement from within the operation of the statute of frauds must have been done not only in reliance upon but in the performance of the contract," citing *Graham* v. *Theis,* 47 *Ga.* 479. So with these rules in mind we conclude from the allegations that there is nothing shown by way of services rendered by the child or change of domestic status which would not be entirely consistent with the changed marital status of his mother, considered wholly apart from any agreement to adopt. If these circumstances had obtained with one otherwise a stranger or standing in a different relation, the case would be different; but construing the petition most strongly against the plaintiff, as we must, we conclude that so far as performance by the parties under the alleged contract is concerned it is not made sufficiently clear to authorize the relief sought.

As pointed out in our statement of facts, the plaintiff in this case is a brother of the plaintiff in the case of *Boles* v. *Eddleman,* 189 *Ga.* 551 (6 S. E. 2d, 589), where it was pointed out that the petition was subject to certain defects which required its dismissal on demurrer. It is contended in the present case that the petition

is substantially the same as in that case, except that the defects there pointed out have been remedied by additional allegations, and that we pointed out in that decision what constituted the necessary bases for a case of virtual adoption. This contention can not be maintained. There was no effort in that case to deal with the questions here considered. It was not necessary to do so. There was no comprehensive treatment of the subject, it not being necessary, because of the other infirmities in that petition which required its dismissal. For the reasons herein stated we hold that the judge did not err in sustaining the general demurrer to the petition. *Judgment affirmed. All the Justices concur.*