CLARA GAMACHE, Plaintiff in Error, v. ALICE J. DOERING and EWALD F. SUNKEL, Executors, d. b. n., of the Estate of LAURA J. KALB, Deceased, et al.—No. 39380.—189 S. W. (2d) 999.

Division Two, November 5, 1945.

*Cox & Blair* and *Walter Wehrle* for plaintiff in error.

546

*Daniel Bartlett* and *Thomas F. Muldoon* for defendants in error.

548

▮▮▮▮▮▮▮▮

▮ BARRETT, C.—By this suit in equity Clara Kropp Gamache seeks to establish that she is the adopted ▮▮▮ daughter of Laura J. Kalb, deceased. Mrs. Kalb left a will which does not mention Clara Kropp Gamache and if Clara is successful in this action she is Mrs. Kalb's sole and pretermitted heir and entitled to approximately $800,-000.00.

The theory of her suit is that Mrs. Kalb, in the presence of witnesses on Christmas Eve 1921, orally adopted her and promised that she would be her (Mrs. Kalb's) heir, that she assented and agreed to the adoption and that they mutually promised thenceforward to treat one another as mother and daughter. Ahern v. Matthews, 337 Mo. 362, 85 S. W. (2d) 377. She claims that for the next thirteen years and thereafter she faithfully performed all the duties of a daughter, fully complied with the oral adoption and all its implications and, therefore, to prevent an injustice to her, a court of equity should exercise its power and decree her status as an adopted child,—Mrs. Kalb having died without recognizing the obligations imposed by the adopted relationship. 2 Mo. L. R. 300, 303; annotations 27 A. L. R. 1325; 142 A. L. R. 84.

The Kalb household consisted of Mr. and Mrs. Charles R. Kalb and Mrs. Kalb's sister, Mrs. Johnston, known as Miss Mattie. They were all wealthy people. A yardman, who also acted as Mrs. Johnston's chauffeur, lived with his family over the garage. The Kalbs always employed a chauffeur (for many years it was Richard Gasta), a colored cook and two colored maids. Most of these people remained in their employ for many years. Mrs. Kalb was a large woman, six feet tall and normally weighed about two hundred pounds. Most of the time, from 1921 until her death in 1941, she was an invalid and spent her time in her bedroom and sitting room on the second floor of their home. She was badly crippled with arthritis, particularly in her hands and arms and required almost constant personal attention.

According to the evidence offered in support of Clara's claim she "went to work" for the Kalbs in June 1921, after responding to a newspaper advertisement, as a "companion" to Mrs. Kalb. Her salary was $40.00 a month, later raised to $45.00 and then $65.00,—after her adoption there was no regular salary. By December 1921 Mrs. Kalb and Clara had become so attached to one another that Mrs. Kalb was considering adopting Clara. Consequently, she consulted a lawyer and was advised that she could legally adopt Clara, without a judicial proceeding, if there were witnesses. So, on Christmas Eve 1921 (as a Christmas present) in the presence of Mr. Kalb, Mrs. Johnston and Fred Gamache, Clara's husband after 1933, Mrs. Kalb said: "Well, now here is Mr. Kalb, Mattie and Freddie and

. . . I now adopt Clara as my daughter and only heir. And she said, 'I don't want my sister, Mrs. Doering, to know about this, because she is troublesome.' So then they each hugged one another, and they both started crying, Mrs. Kalb and Clara.'' Or, another version of the occurrence was that Mrs. Kalb, after expressing her desire for a daughter, her great love for Clara and stating that she had consulted a lawyer, said: " 'So, with my husband's approval, and in the presence of sister Mattie, my husband and Freddie, I am now adopting Clara as my daughter and heir.' And she then said . . . 'Do you agree, Clara?' '' And Clara said, "I certainly do, Mother Kalb. I will do everything I can to be a worthy daughter to you.' '' Then they embraced and cried and Mrs. Kalb warned them to not let her sister, Mrs. Doering, know about it because she would cause trouble.

In corroboration of the adoption Clara's brother, William F. Kropp, a policeman in Webster Groves, and his wife testified that they stopped by the Kalb home in the summer of 1922 and Mr. and Mrs. Kalb and Clara were sitting on the porch. ''After a few minutes, Mrs. Kalb started telling us about the adoption of my sister. She says, 'I suppose you know that we have adopted your sister for my daughter?' And I said 'Yes.' And she said, 'Well, ever since that time, I am the happiest woman in the world.' '' Her sister-in-law, Frances Sharpe Gamache, said that when she was visiting Clara, after they became acquainted in 1933, Mrs. Kalb told her she had adopted Clara in 1921, around Christmas. She said she hoped she would be as good a mother to Clara as Clara was a daughter to her.

Assuming, for the purposes of this opinion, that the evidence adduced in support of Clara's claim is sufficient, prima facie, to establish the fact of her adoption by Mrs. Kalb—within the theory of her case—it does not follow, as she now argues, that she was entitled to a decree. The case is certainly not comparable to Kerr v. Smiley (Mo.), 239 S. W. 501, in which there had been an attempt to comply with the then existing law and adopt a child by deed, the only defect being that the deed was recorded in the wrong county. Neither is the case comparable to McIntyre v. Hardesty, 347 Mo. 805, 149 S. W. (2d) 334, in which there was a deed of adoption, signed and acknowledged, but not recorded as the statutes then required. Neither is the case similar to Ahern v. Matthews, supra, in which there was a written contract and a lost deed of adoption. In each of these cases the solemn, formal, written instruments clearly show that the deceased once had the purpose and intent to adopt the named child. In this case there is no such instrument and while that fact is not determinative there are other circumstances which weigh overwhelmingly against this claim.

Clara was born January 22, 1899, consequently, when she went to work for Mrs. Kalb in June and claims to have been adopted in

December 1921, she was then twenty-two years of age. One may, by complying with the statutory adoption law, adopt an adult. State ex rel. Buerk v. Calhoun, 330 Mo. 1172, 52 S. W. (2d) 742; St. Louis Union Trust Co. v. Hill, 336 Mo. 17, 76 S. W. (2d) 685. In this case we need not say whether there may be a valid oral equitable adoption of an adult, although our interpretation of Thompson v. Moseley, 344 Mo. 240, 125 S. W. (2d) 860, is that it plainly holds that there may not be. In any event, the fact of Clara's majority is a circumstance contrary to the theory of equitable adoption,—the protection of a child who had no choice or will with respect to the establishment of so vital a relationship, and the circumstance weighs heavily against her claim, if it is not destructive of it. Thompson v. Moseley, supra.

Clara says that she was employed as Mrs. Kalb's "companion." Some of the witnesses called her a "maid," Mrs. Kalb's "personal maid" or "personal attendant." But whatever she was known as, there is no dispute as to what she in fact did. When she went to work for Mrs. Kalb and for more than twelve years after she claims to have been adopted she was in constant personal attendance upon her. She washed Mrs. Kalb's hair, helped her bathe, assisted in dressing and undressing her, put her to bed, brought her meals, washed and pressed her clothes, answered the door, took the dog for a walk and was always responsive to Mrs. Kalb's bell for attention. The preponderance of the evidence is that Clara usually wore a white uniform. Her attendance upon Mrs. Kalb's personal needs is not necessarily inconsistent with adoption and the relationship of mother and daughter. But it was not necessary for Mrs. Kalb's daughter to be so engaged for twelve years and it is not likely that she would have been so exacting of a daughter.

In 1934 Clara left the Kalb household and, according to her husband, never returned again. She denies that she and Mrs. Kalb engaged in a violent quarrel or that Mr. or Mrs. Kalb discharged her and so, according to her, there was no serious, permanent breach in their amiable relationship. She says she left to live with her husband, Fred Gamache, whom she secretly married at Waterloo, Illinois, in 1933. Her excuse for not attending Mrs. Johnston's funeral in 1935 or Mr. Kalb's funeral in 1936 was that Mrs. Doering excluded her. But Mrs. Kalb did not die until 1941 and even though their relationship was to be a secret from Mrs. Doering there was not sufficient reason or explanation for her not calling on her adopted mother, especially in view of the avowed attachment. On two occasions after she left the Kalb home, in 1935 and from February to June 1937, she was employed as an attendant by the Carrie Elligson Geitner Home for aged invalids under the name of Clara Kropp and at a salary of $30.00 a month with room and board.

In February 1934, before Mr. Kalb died and before Clara left, Mrs. Kalb executed a will in which her husband was the residuary

beneficiary. There were specific bequests to employees, the first item of the will being, "I give and bequeath to my loyal attendant, Clara M. Kropp, if in my employ at my death, five thousand dollars ($5,-000.00), otherwise this legacy shall lapse." In a subsequent will, executed in 1935 after Clara left, Clara is not mentioned. After Mr. Kalb's death, and in 1936, she executed the will which was finally admitted to probate (in which Mrs. Doering is the residuary beneficiary) and Clara is not mentioned in that will. If, as Clara says, they had not become estranged, there was no reason for Mrs. Kalb's disinheriting her. Clara says they exchanged gifts and that she often visited Mrs. Kalb after 1936 and so she could not have forgotten [1002] her. These facts, while not conclusive, are circumstances against her claim of adoption. Kidd v. St. Louis Union Trust Co., 335 Mo. 1029, 1045, 74 S. W. (2d) 827, 834.

We have tried the case anew (Johnson v. Antry (Mo.), 5 S. W. (2d) 405) and in so doing it will be observed that we have excluded consideration of any evidence which the appellant claims inadmissible (Holliday v. Clark (Mo.), 110 S. W. (2d) 1110) and have considered all the evidence which she claims was improperly excluded by the trial court (Webb v. Salisbury, 327 Mo. 1123, 39 S. W. (2d) 1045), even though much of it is clearly inadmissible.

Aside from these indisputable facts many other circumstances could be weighed and considered but they involve the credibility of the witnesses or the comparative weight of the evidence. There is the circumstance that the only living people who had any knowledge of the adoption were Clara, her husband, her brother, her sister-in-law and her husband's sister-in-law. The only other persons who were ever supposed to have had any knowledge of the adoption, Mr. and Mrs. Kalb and Mrs. Johnston, were dead. On the other hand, the respondents' evidence shows that Mrs. Kalb never mentioned to any relative, friend, employee or business associate so important a fact as having adopted a daughter. Kidd v. St. Louis Union Trust Co., supra. There is the coincidence, which may have impressed the trial court, that while Mrs. Kalb enjoined the utmost secrecy concerning Clara's adoption, yet the first and only time she ever spoke to Clara's brother, his wife or her husband's sister-in-law, (all casual visitors) she informs them of the fact. Hunter v. Lafferty (Mo.), 162 S. W. (2d) 842, 845. There is the question of whether Mrs. Kalb ever held Clara out as an adopted daughter, a circumstance particularly emphasized in many of the cases upon which she relies. Drake v. Drake, 328 Mo. 966, 43 S. W. (2d) 556; Holloway v. Jones (Mo.), 246 S. W. 587; Kerr v. Smiley, supra. While not conclusive, there is the circumstance that Clara never took or used the name of her adopted mother. Craddock v. Jackson (Mo.), 223 S. W. 924; Jenkins v. Gordon (Mo. App.), 256 S. W. 136.

Considering only the circumstances we have emphasized, the evidence in this case does not measure up to the required standard of

such clear, cogent and convincing proof that this court may say "with the utmost confidence" (Barnett v. Clark (Mo.), 252 S. W. 625, 628) that Mrs. Kalb adopted Clara. Benjamin v. Cronan, 338 Mo. 1177, 93 S. W. (2d) 975; Furman v. St. Louis Union Trust Co., 338 Mo. 884, 92 S. W. (2d) 726; Lamb v. Feehan (Mo.), 276 S. W. 71, 80. We agree with the trial court's finding, to which we give deference, that Clara Kropp Gamache is not the adopted daughter of Laura J. Kalb. Niehaus v. Madden, 348 Mo. 770, 778, 155 S. W. (2d) 141, 145.

The trial court's judgment in favor of the respondents and against the appellant is, therefore, affirmed. *Westhues* and *Bohling, CC.*, concur.

PER CURIAM:—The foregoing opinion by BARRETT, C., is adopted as the opinion of the court. All the judges concur.