**HOUSE v. HOUSE et al.**

No. 6452.

Court of Civil Appeals of Texas.
Texarkana.

June 9, 1949.

Rehearing Denied June 30, 1949.

T. C. Chadick, Quitman, for appellant.

O. B. Fisher, Paris, Connally McKay, Tyler, for appellees.

WILLIAMS, Justice.

In this controversy between Mrs. Amanda House, the surviving widow of Walter Lee House, his son, George D. House, and Margaret Allen or Margaret House over the division of the lump sum compensation death benefits paid into the registry of the court by Texas Employers Insurance Association, the insurance carrier, the court concluded Margaret was not the adopted child of deceased and that the facts did not justify the application of the law of estoppel. She was denied recovery on her asserted claim to one-fourth of the death benefits. The widow and above son were each awarded one-half. This appeal involves solely the trial court's disposition of the issue on adoption.

Margaret in June, 1943, at the time Amanda Allen, her mother, married Walter Lee House, was three or four years of age. He was accidentally killed in February, 1948.

The mother testified that prior to marriage they discussed Margaret; as expressed by her: "Well, in corresponding he would ask me about adopting her when we were married and let her go by the name of House, and I agreed"; "When he visited me prior to marriage, we discussed it, and he would just say that 'I am adopting her the quickest minute we can when we get married;'" and "I told him he could"; "with this agreement and understanding we got married." Mrs. Aslin, a neighbor, the only other witness in the case on the issue, testified that in September, 1947, prior to Walter Lee's death in February, 1948, she

heard him say "he was adopting Margaret and he asked me what was the court procedure that one had to go through with to adopt her"; that "he had mentioned it two or three times before he talked in detail."

She was known in Quitman where they lived after the marriage as Margaret House, and was so enrolled and carried on the rolls in the public schools. A burial insurance policy was issued in such name. According to the mother, her name was changed to "House" at the suggestion, request and knowledge of her husband and that he introduced and held the child out to others as his own child. He took Margaret into his home after he married her mother, and from that day until his death, he fed, clothed and educated her. He corrected, punished, guided and exercised parental authority over her. Margaret acted toward and did for Walter Lee House all that is ordinarily required of a child of her age by a parent; being obedient to and affectionate toward him and he toward her. She called him "Daddy" and he called her "Pal" or "Sweetheart."

He never consulted an attorney relative to instituting an adoption proceeding and none was ever filed. The mother testified that he never signed any writing of adoption or to adopt or any written promise that he would except what was in his letters and these she had destroyed because of lack of space in their tourist home. She claimed though that during all the time he kept saying he was going to adopt Margaret but "kept waiting to legally adopt her until he could save up some money" and "delayed any action because of inconvenience,"—"when court would be open he would be off in the oil field at work."

The trial court found as a fact that "Walter Lee House had expressed an intention to sometime in the future adopt Margaret as his child, but that Walter Lee did not consider that he had adopted her and was anticipating court action," and that "there was no contract of adoption or contract to adopt." The court further found that "the relationship between Walter Lee House and Margaret Allen or Margaret House was that of the ordinary and normal relationship between step-father and step-daughter"; that "neither Margaret Allen nor her mother suffered any inconvenience or deprivation nor gave up nor surrendered any right or privilege as the result of the deceased's discussion nor did any benefit accrue to the deceased from the same" and concluded as a matter of law "that Margaret is not the adopted child of the deceased and that the facts did not justify the application of the equitable doctrine of estoppel."

■ Appellant's points are predicated upon the contention that the evidence with respect to the alleged agreement to adopt "was undisputed, by disinterested witnesses and impelled a finding that the mother and deceased had made such a contract to adopt." Mrs. Aslin in her testimony had no knowledge of any agreement. The alleged contract rests solely upon the testimony of the mother. The other party to the alleged contract is dead. The record is absent any alleged written memoranda of an agreement. If the claim of adoption was sustained, Margaret, her daughter, would recover one-fourth of the compensation death benefits instead of none and George House, deceased's child by a former marriage, would recover one-fourth instead of one-half. To the extent that the love of a mother for her child might influence the parent under such a situation as above observed, the mother would not be considered a disinterested witness. Her credibility and the weight to be given to her testimony were for the court. 41 Tex.Jur. (Trial Civil Cases) Secs. 172 and 229. From the trial court's finding that no contract to adopt was made, it is apparent that credence was not given to the mother's testimony and that such other testimony introduced as to the relationship between deceased and Margaret, which the court termed the natural relation between a step-father and step-daughter, was insufficient to lend convincing evidence to the asserted contract.

■■ The facts and observations above detailed would not warrant an appellate court to disturb above fact finding that "no contract to adopt was made." "Oral adoption agreements are to be regarded with grave suspicion when sought to be en-

forced after the death of the adoptive parent, and are to be subjected to close scrutiny and permitted to stand only when established by evidence that is clear, cogent, and convincing, leaving no doubt as to their actual making or existence." 142 A.L.R., pp. 102, 103. See also 2 C.J.S., Adoption of Children, § 26, p. 396.

The application of the equitable doctrine of estoppel as discussed or cited in Jones v. Guy, 135 Tex. 398, 143 S.W.2d 906, 908, 142 A.L.R. 77, does not arise in the absence of establishment of the alleged contract to adopt. As held in Howell v. Thompson, Tex.Civ.App., 190 S.W.2d 597, 600, recognized by appellant, a contract to adopt is an essential element to give rise to an adoption by estoppel.

The judgment is affirmed.