**GARCIA v. SAENZ et al.**

No. 12289.

Court of Civil Appeals of Texas.
San Antonio.

June 13, 1951.

Rehearing Denied Sept. 5, 1951.

Brown & Brown, William L. Scarborough and Tom M. Pogue, all of Corpus Christi, for appellant.

Philip A. Kazen, Bismark Pope, Laredo, for appellees.

POPE, Justice.

This is an appeal from a judgment based on an instructed verdict against appellant, who sought a declaration that he was, by reason of an oral adoption agreement, the adopted son and heir of his deceased aunt and uncle, both of whom died intestate. Eusebia G. Saenz, hereinafter called appellee, is the only natural child of appellant's aunt and uncle and in the administration of her father's estate she was adjudged the sole heir. The other appellees are formal parties and bondsmen. The important question presented by this appeal is whether appellant presented sufficient evidence to prove a contract to adopt, as alleged.

Appellant's mother died when he was four years old. The year after his mother's death, appellant's paternal uncle and his family made a pleasure trip to Starr County, where appellant was living with his father and his brothers and sisters. During that visit the uncle, in the presence of his own daughter and one of appellant's sisters, told appellant's father that he wanted him to give appellant to him and that he would take care of the boy and give him an education. The father consented to this arrangement, and thereafter, except for annual visits with his natural father, appellant lived in the home of his uncle and aunt. While he lived there he worked on their farm and was treated as a natural son. When he was ten years old appellant learned that he was not the natural son of the uncle and aunt. There was no evidence

presented which would show that appellant had performed his tasks by reason of any reliance upon representations made to him which induced such performance under the belief that he was an adopted child.

Appellant undertook to prove his allegations of a contract to adopt by the direct testimony of two persons who were present at the time of making the purported adoption agreement. He presented the testimony of his natural sister, who recalled the circumstances of her young brother's departure from home as well as the conversation between her father and her uncle. She testified that her uncle told her father that "he wanted for him to give him Antonio and that he would take care of him and give him an education." This was "all right" with Antonio's father. The witness stated that no other words were spoken that she remembered.

Appellee was called as an adverse witness to testify about the adoption agreement. Her unimpeached testimony was that appellant came to his new home when he was about five years old and she was about eighteen years old. Appellee was appellant's godmother. She stated that the relationship of godmother and godchild imposed the duty upon her to look after the child's Christian life. She stated that she and her parents took appellant into their home "so they could help his father" who was very poor. She denied that any contract or agreement to adopt the child was ever entered into with appellant's natural father or that it was even discussed. From these two witnesses it appears that one entirely denied an adoption agreement and the other stated that the agreement was to rear and educate rather than to adopt the child.

Apart from this testimony relating directly to the contract, a letter was introduced in evidence that appellant wrote his uncle while in the army wherein he addressed him as "Dear Uncle" rather than as a father. When the aunt died, the uncle caused printed funeral notices to be prepared announcing the death. The notices named the surviving members of the family, including appellee, but omitted the appellant's name as a member of the family by adoption or otherwise. One witness, in conversation with the uncle, had referred to appellant as his son, which the uncle had never corrected or denied. It was shown that appellant was discharged from the army upon the death of his uncle's only natural son.

Certain school officials testified from various enrollment and scholastic records covering several years. They reflected that the uncle was appellant's "parent or guardian." Who furnished this information was not known, but the school authorities stated it would ordinarily be furnished by either the uncle or the appellant. The school witnesses testified that the information as to a child's "parent or guardian" was included on their records so that the school would know the name of the person responsible for the child and not necessarily the name of the parent. When appellant was separated from the army, his separation papers showed the uncle to be his father. This record was ruled inadmissible but, even if considered along with the other evidence, it would not be proof of the alleged contract for adoption until it was proved that the aunt or uncle furnished the information.

The dictum in some of the earlier cases forbade both an oral contract to leave property to a foster child and also an oral contract for adoption. Hooks v. Bridgewater, 1921, 111 Tex. 122, 229 S.W. 1114, 15 A.L.R. 216; Mulkey v. Allen, Tex.Com.App. 1931, 36 S.W.2d 198. That the statutory requirements for an adoption were not always strictly required was decided later in Cubley v. Barbee, 1934, 123 Tex. 411, 73 S.W.2d 72. There, however, every requirement of the statute was in fact met except the actual recording of the adoption instrument, as was then required by statute. In excusing the strict statutory requirements, the court placed its decision on grounds of equitable estoppel in line with many American authorities. That authority was followed by the Commission of Appeals in Cheney v. Coffey, 1938, 131 Tex. 212, 113 S.W.2d 162, where there was again a failure to comply with the recording feature of the adoption statute. That case, however, by dictum stated that an oral contract for adoption would be valid in the

complete absence of any effort to follow a statutory adoption. It has now been held on several occasions that such an oral agreement for adoption may be sustained on the grounds of estoppel. Cavanaugh v. Davis, Tex.Sup.1951, 235 S.W.2d 972; Jones v. Guy, 135 Tex. 398, 143 S.W.2d 906, 142 A.L.R. 77; Garcia v. Quiroz, Tex.Civ. App., 228 S.W.2d 953; Hilt v. Hooper, Tex. Civ.App., 203 S.W.2d 334, 336.

While the Texas authorities have progressed by steps from a rule which required compliance with the adoption statutes, to one which permits even an oral agreement for adoption in complete disregard for the statutes when fraud may thereby be avoided, such rule does not excuse the proof of an agreement to adopt. Cheney v. Coffey, supra; House v. House, Tex.Civ.App., 222 S.W.2d 337; Barrow v. Rich, Tex.Civ.App., 213 S.W.2d 463; Hilt v. Hooper, Tex.Civ. App., 203 S.W.2d 334, 338. Cavanaugh v. Davis, supra, states: "In no case has this Court upheld the adoptive status of a child in the absence of proof of an agreement or contract to adopt." [235 S.W.2d 974.] And, as stated in Howell v. Thompson, Tex. Civ.App., 190 S.W.2d 597, 600: "It is the absence of such an agreement, which is totally missing from the evidence offered by appellants in this instance, that rendered their claim insufficient as a basis for the submission of an issue as to adoption to the jury."

■ And one who claims the benefit of such an oral agreement has the burden of establishing it by evidence that is clear, unequivocal and convincing. Cavanaugh v. Davis, supra; House v. House, supra; Hilt v. Hooper, supra; Gamache v. Doering, 354 Mo. 544, 189 S.W.2d 999; Rich v. Baer, Mo.Sup., 238 S.W.2d 408; Thornton v. Miller, Mo.Sup., 151 S.W.2d 1101; Stillman v. Austin, Mo.Sup., 148 S.W.2d 573; Taylor v. Hamrick, Mo.Sup., 134 S.W.2d 52; Keller v. Lewis County, 345 Mo. 536, 134 S.W.2d 48; Benjamin v. Cronan, 338 Mo. 1177, 93 S.W.2d 975; Kidd v. St. Louis Union Trust Co., 335 Mo. 1029, 74 S.W.2d 827; Arfstrum v. Baker, Mo.Sup., 214 S. W. 859; In re Brandel's Estate, 44 Cal. App.2d 735, 112 P.2d 976; In re Estate of Taggart, 190 Cal. 493, 213 P. 504, 27 A.L.R. 1360; Rivers v. Rivers, 240 Ala. 648, 200 So. 764; Hutton v. Busaytis, 326 Ill. 453, 158 N.E. 156; Robbins v. Millikin Nat. Bank, 334 Ill.App. 190, 78 N.E.2d 819; Taylor v. Boles, 191 Ga. 591, 13 S.E.2d 352; Sower v. Wells, 111 Neb. 334, 196 N.W. 693; Wiseman v. Guernsey, 107 Neb. 647, 187 N.W. 55; Cain v. Dowling, 105 Neb. 741, 181 N.W. 930; 1 Am.Jur., Adoption of Children, § 16; 2 C.J.S., Adoption of Children, § 26(2)a; 171 A.L.R. 1323–1326; 142 A.L.R. 111–122; 27 A.L.R. 1355–1357.

■ The testimony touching the existence of the contract alleged amounts to a direct denial of its existence. An agreement to rear and educate, as testified by one of the witnesses, is entirely different from a contract to adopt. 2 C.J.S., Adoption of Children, § 26b. The other witness, though called under the adverse party rule, gave direct unimpeached testimony that no adoption contract was discussed. In the absence of impeachment or proof to the contrary, such positive testimony may be taken as true. Phenix Dairy v. White, Tex.Civ. App., 169 S.W.2d 492; 4 Tex.Jur. Ten Year Supp. (1937–47) § 419a.

■ Acts of human kindness referable to an undertaking to rear and educate a helpless child do not prove an agreement to adopt. Nor is loco parentis the equivalent of adoption. Schrimpf v. Settegast, 36 Tex. 296; McDonald v. Texas Employers' Insurance Association, Tex.Civ.App., 267 S.W. 1074. The devolution of the estates of benevolent families and the operation of the laws of descent and distribution do not rest upon a showing so tenuous and slender as is here presented. We find no evidence referable to a contract for adoption sufficient to raise a jury issue. Howell v. Thompson, supra; Aman v. Cox, Tex.Civ. App., 164 S.W.2d 744, 750; accord, Allee v. Vaden, Tex.Civ.App., 112 S.W.2d 237.

The judgment is affirmed.